## A00A0619. WILLIAMS v. THE STATE.
### (536 SE2d 572)

MILLER, Judge.

Elby Williams was convicted of one count of perjury. Following the denial of his motion for new trial, Williams filed this appeal in which he asserts six enumerations of error. Having found no merit to any of the purported errors, we affirm.

Williams, a private investigator, was appointed to assist with the defense of William Marvin Gulley against whom the State planned to seek the death penalty. During a pretrial hearing, Gulley moved to exclude evidence that he had been charged with two other

---

murders in East Point. The State wanted to introduce evidence about these murders during the sentencing phase of Gulley's trial. The trial judge in the *Gulley*[1] case had previously cautioned the State that any evidence that the State had failed to provide to the defense would be excluded. Gulley asserted that the State had denied Williams access to copies of two arrest warrants. Gulley's counsel advised the court, "Well, Your Honor, they have not given us the arrest warrant; isn't that right Elby?" To which, Williams responded, "That's right, they refused to give it to us."

Under oath, Williams declared that two officers from the East Point Police Department had rejected his request to provide certain information. According to Williams, while at the police department, Detectives William Gorman and Richard Joiner had refused to give him copies of the warrants and told him that he could not have copies of them.

> PROSECUTOR: Sir, did you ever ask [Detective Gorman] for his file?
> WILLIAMS: I asked him for information about the file. I asked him if he could at least give me warrants. You know, he said there were existing warrants and he refused to give me even the warrants.

Again, when counsel inquired: "What did he tell you regarding the warrants?",

> WILLIAMS: He told me there was [sic] existing warrants; that they had not been served. I asked him could I have copies of those warrants. He said no or whatever. He couldn't get me copies of those warrants, but the other investigator who was in the room pulled it up on the computer to verify that there were warrants.
> PROSECUTOR: Let me just ask you something. You said he said no or whatever. Which one did he say; did he say one or both or what?
> WILLIAMS: He said I could not get copies of those warrants.
> PROSECUTOR: That's exactly what he said?
> WILLIAMS: Yes.
> PROSECUTOR: You remember that clearly?
> WILLIAMS: Yes.
> PROSECUTOR: Did you ask him could you get them at any other time?
> WILLIAMS: No, sir. When he told me that, I didn't see any

---

[1] *Gulley v. State*, 271 Ga. 337 (519 SE2d 655) (1999).

need in asking him any further questions.

Notwithstanding this testimony, the trial judge denied Gulley's motion to exclude the East Point evidence that Gulley had committed a double murder of an elderly mother and daughter in East Point, only a week before the murder for which he was under indictment.[2] Gulley's conviction and death sentence were affirmed after the Supreme Court found sufficient evidence establishing that Gulley's outrageous acts revealed torture, depravity of mind, and the aggravated battery of the victim, within the meaning of OCGA § 17-10-30 (b) (2), (7).[3]

Based on his testimony in the *Gulley* case, Williams was indicted for perjury. Subject to redaction by the court, a certified transcript of Williams' testimony in that trial was admitted into evidence.

Detectives Gorman and Joiner disputed Williams' rendition of events. Joiner testified that he explicitly told Williams it would be "no problem" getting him a copy of the warrant. Joiner testified that both he and Gorman told Williams that he could have copies of the warrants and offered to accompany Williams to the Information Office where the warrants were kept. According to Joiner, Gorman informed Williams that the "case files and everything" were already in Albany. Joiner noted that Gorman expressed surprise that Williams "drove all the way up to East Point to see something that should already be in the hands of the prosecution and the defense teams."

Gorman reiterated that he had advised Williams that he could have copies of the arrest warrant and also the police report but that they would have to walk downstairs to another office to get them. According to the detectives, when they went with Williams downstairs and walked past the warrant room, Williams never asked for the copies, telling them instead that he would check to see what information was already down in Albany. Gorman testified, "I did not refuse to give him anything from my file or the warrants or anything."

Dougherty District Attorney Kenneth B. Hodges III, who prosecuted the *Gulley* case, testified that the East Point evidence was material and crucial to the sentencing phase of the State's case. In his view, it was vital for the jury to be informed that Gulley had attacked and murdered two elderly women (mother and daughter) in East Point before murdering an 81-year-old woman and raping her 60-year-old daughter in Dougherty County a week later.

1. Williams contends that the trial court erred in admitting a

---

[2] Id. at 339.
[3] Id. at 339 (1).

certified transcript of his prior testimony. He claims that this evidence was inadmissible hearsay. But the prior in-court sworn testimony was offered to prove that Williams did, in fact, make the earlier statements and not to prove the "truthfulness" of his earlier testimony.[4] This evidence constituted original evidence and was properly admitted.[5]

2. Williams contends that the trial court erred in admitting State's Exhibit 3B, a trial transcript, because it had been altered from the version certified by the clerk. While testifying, District Attorney Hodges highlighted certain portions of the transcript from the *Gulley* trial. When Williams objected to the highlighted sections going out with the jury, the court ruled that it would substitute a page for the one that was highlighted. Then when Williams objected to the admission of the transcript because the substitution of a page would vitiate the certification, the court stated that it would have the clerk certify the substituted page. This certification apparently did not occur.

Pretermitting whether any error occurred, Williams failed to prove the requisite harm needed for reversal.[6] Plainly, this case did not turn on this particular exhibit. Rather, the determinative issue was credibility, i.e., whether the jury believed Williams or the two detectives. The credibility of a witness is always a matter for the finder of fact to resolve.[7]

3. Williams asserts that the trial court improperly expressed an opinion as to whether there was sufficient corroborating evidence of the similar transaction evidence.

Prior to trial, the court heard and granted the State's motion to introduce similar transaction evidence which showed that on another occasion Williams had also testified untruthfully. Consistent with the court's ruling, the district attorney disclosed to the jury that when Gulley's defense team was attempting to obtain a continuance, "the substance of [Williams'] testimony changed numerous times throughout the course of the hearing."

During the State's closing argument, Williams objected to the prosecutor's mention of that similar transaction evidence. He claimed that this testimony was, in fact, inadmissible since the evidence lacked sufficient corroboration. In overruling the defense objection, the trial court succinctly explained, "The objection is overruled. The

---

[4] See *Fugitt v. State*, 256 Ga. 292, 295 (1) (c) (348 SE2d 451) (1986); *Hurston v. State*, 194 Ga. App. 226 (390 SE2d 119) (1990).

[5] *Walker v. State*, 187 Ga. App. 631, 633 (1) (371 SE2d 199) (1988).

[6] *Durham v. State*, 129 Ga. App. 5, 6 (3) (198 SE2d 387) (1973) (reversible error consists of error plus harm).

[7] *Norris v. State*, 220 Ga. App. 87, 88 (1) (469 SE2d 214) (1996).

other evidence in the case including that which relates to the offense charged, in the Court's opinion, provides sufficient corroboration of the similar transactions evidence." The court carefully admonished the jurors that it was "intimat[ing] nothing other than that counsel's objection is overruled." Later, in the general charge, the jury was again instructed that the court had not intended to express any opinion by any of its rulings or comments during the trial.

The remarks of a judge assigning a reason for a ruling do not constitute an expression of opinion or a comment on the evidence within the meaning of OCGA § 17-8-57.[8] Moreover, in raising the admissibility issue during the State's closing, Williams should have anticipated that the court might feel compelled to explain its earlier decision to permit the similar transaction evidence.[9]

4. Williams claims the evidence was not sufficient to sustain the verdict of conviction for perjury. He argues that the State failed to offer evidence to corroborate the offense.

The applicable essential elements of the offense of perjury are: (1) knowingly and wilfully making a false statement, (2) material to an issue in question, (3) while under oath in a judicial proceeding.[10] A conviction for perjury requires either the testimony of two witnesses or that of one witness and corroborating circumstances to support it.[11] Here, the evidence established that while under oath in a judicial proceeding, Williams knowingly made a false statement in an effort to mislead the trial court about an issue material to sentencing. Two witnesses for the State recounted a diametrically different version of events from Williams' rendition. This evidence was sufficient to satisfy OCGA § 24-4-8 and to sustain Williams' conviction for perjury.[12]

5. Williams contends that the State failed to prove venue beyond a reasonable doubt because the State did not prove that the incident of purported perjury took place in Dougherty County.

Hodges testified that the *Gulley* trial had been conducted in precisely the same courtroom as the case against Williams was then being tried. He attested that Williams' statements were made in that courtroom. The certified copy of the *Gulley* transcript entered into evidence was captioned "IN THE SUPERIOR COURT FOR THE COUNTY OF DOUGHERTY, STATE OF GEORGIA." When venue is not in dispute, as here, and no evidence indicates the crime may have occurred in a different county, slight evidence is sufficient to prove

---

[8] *McGinnis v. State*, 258 Ga. 673, 675 (4) (372 SE2d 804) (1988); *Aman v. State*, 223 Ga. App. 309, 310 (2) (477 SE2d 431) (1996).

[9] See id.

[10] OCGA § 16-10-70.

[11] OCGA § 24-4-8; *Dixon v. State*, 172 Ga. App. 803, 804 (324 SE2d 780) (1984).

[12] Id.

venue.[13] This enumeration lacks merit.

6. Although Williams claims the trial court erred in denying an appeal bond, that issue is moot since we affirm his conviction.[14]

*Judgment affirmed. Pope, P. J., and Smith, P. J., concur.*

DECIDED JUNE 29, 2000.

*Farkas & Ledford, Thomas G. Ledford, John L. Tracy*, for appellant.

*Kenneth B. Hodges III, District Attorney, Bradford R. Pierce, Assistant District Attorney*, for appellee.

---

[13] *Joiner v. State*, 231 Ga. App. 61, 63 (497 SE2d 642) (1998). Accord *Graves v. State*, 269 Ga. 772, 773 (1) (504 SE2d 679) (1998).

[14] *Hunter v. State*, 219 Ga. App. 758, 759 (3) (467 SE2d 2) (1996).

