A11A2293. WALKER v. THE STATE.
(725 SE2d 771)

BARNES, Presiding Judge.

A jury convicted Charles Brent Walker of perjury. On appeal from the denial of his motion for a new trial, Walker contends that the trial court erred by: (1) denying his motion for a directed verdict of acquittal; (2) reading an unredacted version of the indictment to the jury; (3) allowing the State to prove that he made sworn false statements in a former proceeding through witness testimony; (4) declining to give his requested jury instruction pertaining to how perjury can be proven; (5) concluding that the State had not committed a *Brady* violation; and (6) concluding that the State had satisfied its statutory discovery obligations. For the reasons set forth below, we affirm.

Construed in favor of the jury's verdict,[1] the evidence showed that on January 1, 2010, an officer with the City of Rome Police Department stopped Walker for running a red light and issued him a traffic citation. A video camera mounted in the officer's patrol car recorded the encounter, but not the actual red light violation. The

---

[1] See *Smith v. State*, 279 Ga. App. 211 (630 SE2d 833) (2006).

video did show the location of the officer's patrol car when the violation occurred.

Following his demand for transfer to the superior court for a jury trial, Walker was tried before a jury on the misdemeanor charge of running a red light (the "red light trial"). See OCGA § 40-6-20. The video of the traffic stop was not played for the jury, and the officer who made the stop was the only witness called by the State. The red light trial was not recorded by a court reporter.

After the officer testified that he was stopped in traffic at an intersection when he observed Walker in the lane next to him turn left and run the red light, Walker was sworn in as a witness and denied that the light was red when he turned left. He further testified that the officer had actually been pulling out of a restaurant parking lot behind a white Buick on the opposite side of the intersection at the time he made the left turn. During the course of his testimony, Walker filled in a diagram showing the officer's patrol car in the parking lot on the other side of the intersection.

Walker's testimony and the diagram he drew placed the officer's patrol car at a vantage point from which it would have been impossible for the officer to observe whether the light was red at the time of Walker's left turn. Walker was unequivocal in his testimony regarding the location of the officer's patrol car and at one point accused the officer of lying. Following Walker's testimony, the jury returned a verdict of not guilty.

The judge who presided over the red light trial was concerned that either Walker or the officer had committed perjury, given that their accounts of where the patrol car had been located were so diametrically opposed to one another. At the judge's request, the State then reviewed the video from the officer's patrol car, which confirmed the officer's testimony about his location at the time of the red light violation. Specifically, the video showed that the officer was stopped at the intersection in the inside lane of traffic, next to the center turn lane from which Walker made his left turn. The video also showed the restaurant parking lot as the officer immediately drove through the intersection to pursue Walker's vehicle and initiate the traffic stop. The video undisputedly revealed that there were no police cars pulling out of the restaurant parking lot at that time.

Walker was indicted and tried before a jury on one count of perjury based on his testimony at the red light trial regarding the location of the officer's patrol car (the "perjury trial"). Because the red light trial had not been recorded and transcribed by a court reporter, the State relied on the testimony of several witnesses —

including the superior court judge who presided over that trial,[2] his judicial assistant, and the two assistant district attorneys who tried that case — to establish the substance of Walker's testimony under oath. The officer who initiated the traffic stop also testified at the perjury trial that he had been stopped at the intersection in the inside lane of traffic when he observed Walker make a turn left from the adjacent center lane, and the State introduced the video recording which corroborated the officer's testimony about his location.

After the State rested, Walker took the stand in his own defense. He conceded that the video showed that there were no police cars pulling out of the restaurant parking lot at the time of his left turn. Walker claimed that his testimony in the red light trial that the officer had been pulling out of the restaurant parking lot had simply been a mistake rather than a wilful false statement.

After reviewing the video and hearing from the witnesses, the jury convicted Walker of perjury. See OCGA § 16-10-70. Walker filed a motion for a new trial on several grounds, which the trial court denied. This appeal followed.[3]

1. "In reviewing the denial of a motion for a directed verdict of acquittal, we apply the same standard of review applicable to a challenge to the sufficiency of the evidence." *Clement v. State*, 309 Ga. App. 376, 377 (1) (710 SE2d 590) (2011). Under that standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). In answering that question, we do "not re-weigh the evidence or resolve conflicts in testimony, but rather defer[ ] to the jury's assessment of the weight and credibility of the evidence." *Walker v. State*, 282 Ga. 406 (651 SE2d 12) (2007).

"A person to whom a lawful oath or affirmation has been administered commits the offense of perjury when, in a judicial proceeding, he knowingly and willfully makes a false statement material to the issue or point in question." OCGA § 16-10-70. The

---

[2] A different superior court judge presided over the perjury trial.

[3] Walker did not enumerate as error on appeal or contend in the trial court that his criminal prosecution for perjury following his acquittal in the red light trial was barred by the doctrine of collateral estoppel incorporated into the federal Fifth Amendment guarantee against double jeopardy. See *Ashe v. Swenson*, 397 U. S. 436, 442-444 (90 SC 1189, 25 LE2d 469) (1970); *Moore v. State*, 254 Ga. 674, 675-678 (333 SE2d 605) (1985); *Zolun v. State*, 169 Ga. App. 707, 708-710 (3) (314 SE2d 672) (1984) (physical precedent only). Because this court is a court for the correction of errors, we will not consider matters, even of constitutional magnitude, that were not raised and ruled upon in the trial court. See *Worthy v. State*, 252 Ga. App. 852, 854 (3) (557 SE2d 448) (2001).

essential elements of the offense of perjury thus are: "(1) knowingly and willfully making a false statement, (2) material to an issue in question, (3) while under oath in a judicial proceeding." *Williams v. State*, 244 Ga. App. 692, 696 (4) (536 SE2d 572) (2000). "A conviction for perjury requires either testimony of two witnesses or that of one witness and corroborating circumstances to support it." *Dixon v. State*, 172 Ga. App. 803, 804 (324 SE2d 780) (1984). See OCGA § 24-4-8.

Walker contends that the trial court erred in denying his motion for a directed verdict of acquittal because there was insufficient evidence that his false statement regarding the location of the officer's patrol car was material to the red light trial. He does not challenge the sufficiency of the evidence with respect to the other essential elements of perjury.

The "test of materiality is whether the alleged false statement could have influenced the decision as to the question at issue in the judicial proceeding in which the perjury is alleged to have been committed[.]" *Hardison v. State*, 86 Ga. App. 403 (71 SE2d 525) (1952).

> The materiality of the false testimony may be shown by the record of the proceedings in which the testimony was given, or by the testimony there given, or by all or so much of the pleadings therein as show the issues, together with such other facts proved on the trial as tend to show the testimony to be on a material issue.

(Citation and punctuation omitted.) *Clackum v. State*, 55 Ga. App. 44, 51 (189 SE 397) (1936). Whether the false statement was material is normally an issue for the jury. *West v. State*, 228 Ga. App. 713, 715 (2) (492 SE2d 576) (1997).

Walker's false statement in the red light trial about the location of the patrol car went to the issue of whether the officer could have observed the alleged red light violation and thus over whether the officer's testimony was credible. As such, his testimony clearly could have influenced the jury's decision over whether he actually ran the red light. Moreover, our case law establishes that if a witness testifies to a material issue at trial, then false testimony going to the credibility of that witness likewise can be considered material. *West*, 228 Ga. App. at 715 (2). Under these circumstances, we conclude that there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Walker's false statement about the location of the officer's patrol car was material. See id.

2. Walker also argues that the trial court erred in reading the perjury count of the indictment to the jury without first redacting

any reference to the prior red light trial. According to Walker, the unredacted reference to the red light trial in the perjury indictment impermissibly placed his character in issue and thus prejudiced the jury against him.

Walker's argument is without merit. The reference in the perjury indictment to the prior red light trial was relevant and necessary to explain the context of and the basis for the alleged perjured statement made by Walker. But, in any event, Walker cannot demonstrate how he was harmed by having the unredacted perjury indictment read to the jury. "It is axiomatic that harm as well as error must be shown to authorize a reversal by this court." (Citation and punctuation omitted.) *McCollum v. State*, 258 Ga. App. 574, 579 (3) (574 SE2d 561) (2002). The trial court instructed the jury in its preliminary and final charges that it should not consider the indictment as evidence in the perjury trial. At the same time, the jury heard abundant substantive testimony regarding the prior red light trial without any objection from Walker that the testimony impermissibly placed his character in issue. Given these circumstances, Walker cannot show harm resulting from the reading of the unredacted perjury indictment to the jury. See *Hines v. State*, 276 Ga. 491, 495 (6) (c) (578 SE2d 868) (2003); *Presnell v. State*, 274 Ga. 246, 253 (13) (b) (551 SE2d 723) (2001).

3. Walker further contends that the trial court erred in allowing the State to prove that he made sworn false statements in the red light trial through witness testimony. According to Walker, his sworn statements in the red light trial could only be established through the admission of an official court transcript of that trial. Given the unavailability of such a transcript, Walker argues that the perjury charge against him should have been dismissed.

We are unpersuaded. As a general rule, to prove that the defendant made a perjured statement in a former judicial proceeding, the State must introduce the record of the former proceeding or a duly authenticated transcript. See *Heflin v. State*, 88 Ga. 151, 158 (14 SE 112) (1891). See generally OCGA § 24-5-31; *Sikes v. State*, 76 Ga. App. 883, 885 (2) (47 SE2d 677) (1948). But the State can introduce witness testimony to establish the defendant's perjured testimony in the former proceeding if an original record of the proceeding is unavailable or inaccessible and cannot be produced despite the State's exercise of due diligence. See *Pence v. State*, 36 Ga. App. 270, 271-272 (136 SE 820) (1927); *Hart v. State*, 34 Ga. App. 592 (130 SE 346) (1925). See generally OCGA § 24-5-2; *Brinkley v. State*, 301 Ga. App. 827, 830 (2) (689 SE2d 116) (2009).

It is undisputed that the red light trial was not recorded by a court reporter and thus could not be transcribed for use in the perjury trial. Accordingly, because an original record of the red light

trial was unavailable and could not be produced despite the exercise of the State's due diligence, the State was authorized to prove Walker's perjured testimony through witness testimony. See *Pence*, 36 Ga. App. at 271-272; *Hart*, 34 Ga. App. at 592. The trial court therefore committed no error in denying Walker's motion to dismiss.

4. In a related enumeration of error, Walker contends that the trial court erred in declining to charge the jury that as a general rule, to convict a defendant for perjury, the State must introduce the record of the former proceeding or a duly authenticated transcript. However, as made clear by our discussion in Division 3, Walker's requested charge was an incomplete statement of the law. Thus, the trial court committed no error in declining to give the requested charge. See *Gresham v. State*, 303 Ga. App. 682, 688 (3) (695 SE2d 73) (2010) ("If any portion of a requested charge is inapt, incorrect, misleading, confusing, not adequately adjusted or tailored, or not reasonably raised by the evidence, denial of the charge request is proper.") (citation, punctuation and footnote omitted).

5. In two enumerations of error, Walker maintains that the trial court erred in failing to conclude that the State violated *Brady v. Maryland*, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963), by not disclosing to him that the prosecution had spoken with one of the jurors who decided the red light trial.[4] According to Walker, the juror's statements to the State about the jury's deliberations in the red light trial showed that Walker's sworn testimony about the location of the officer's patrol car was immaterial to the jury's decision to acquit him in that case.

To prevail on his *Brady* claim, Walker must show that "had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." (Citation omitted.) *Morris v. State*, 284 Ga. 1, 3 (2) (662 SE2d 110) (2008). He has failed to make such a showing in this case, given that the juror could not have testified in the perjury trial about the effect of Walker's sworn testimony on jury deliberations in the red light trial.

As previously noted, the test of materiality in a perjury case "is whether the alleged false statement *could* have influenced the decision as to the question at issue in the judicial proceeding in which the perjury is alleged to have been committed[.]" (Emphasis supplied.) *Hardison*, 86 Ga. App. at 403. As such, the actual effect of the false statement on jurors in the former judicial proceeding has no bearing on its materiality. See id. Consequently, Walker cannot

---

[4] The State's interview of the juror was not recorded or otherwise memorialized in writing.

demonstrate that even if the State had made him aware of the juror's statements regarding deliberations in the prior red light trial, there is a reasonable probability that the outcome of the perjury trial would have been different. The trial court thus committed no error in concluding that Walker could not prevail on his *Brady* claim.

6. Finally, Walker contends that the trial court erred in concluding that the State had satisfied its obligations under the Criminal Procedure Discovery Act, OCGA § 17-16-1 et seq., when the State had failed to produce (a) statements of its testifying witnesses or (b) the police duty logs for the day of the red light violation.

(a) As our Supreme Court has explained,

[a]lthough OCGA § 17-16-7 requires the State to produce "any statement of any witness that is in the possession, custody, or control of the state," that requirement applies only to statements that have either been recorded or committed to writing. This statutory obligation is not triggered when a witness merely makes an oral statement.

(Citations and punctuation omitted.) *Hunt v. State*, 278 Ga. 479, 480 (2) (604 SE2d 144) (2004). Here, as Walker himself points out in his brief, there is no evidence in the record that any of the testifying witnesses gave the police or the prosecution a written or recorded statement that was not produced to him; therefore, there is no evidence that a discovery violation occurred with regard to witness statements. See *Chandler v. State*, 309 Ga. App. 611, 613 (1) (710 SE2d 826) (2011); *Parks v. State*, 294 Ga. App. 646, 647-648 (1) (669 SE2d 684) (2008).

(b) Walker claimed that he was entitled to production of the police duty logs for the day of the red light violation because they might have shown other police cars in the immediate area of the intersection, and thus could have explained why Walker mistakenly believed that the officer who stopped him had pulled out of the restaurant parking lot. But a defendant asserting a discovery violation must show harm as well as error to merit reversal of his conviction. See *Prindle v. State*, 240 Ga. App. 461, 463 (3) (523 SE2d 44) (1999); *Evans v. State*, 233 Ga. App. 879, 880 (2) (506 SE2d 169) (1998). And as Walker himself conceded, the video from the officer's patrol car showed that there were no police cars pulling out of the restaurant parking lot at the time. For this reason, pretermitting whether a discovery violation occurred, we conclude that Walker cannot show how the failure to produce the police duty logs caused any harm.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED FEBRUARY 24, 2012 —
RECONSIDERATION DENIED MARCH 12, 2012 — 

*Floyd H. Farless, Donald F. Samuel*, for appellant.
*Leigh E. Patterson, District Attorney, Suhirjahaan S. Morehead, Assistant District Attorney*, for appellee.