**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 11, 2016**

# In the Court of Appeals of Georgia

A15A1774. SNEIDERMAN v. THE STATE.

ANDREWS, Presiding Judge.

Andrea Sneiderman appeals from the judgment of conviction entered on jury verdicts finding her guilty of hindering the apprehension of a criminal in violation of OCGA § 16-10-50 (count 1); concealing a material fact from the Dunwoody Police Department in violation of OCGA § 16-10-20 (count 2); three counts of making a false statement to the Dunwoody Police Department in violation of OCGA § 16-10-20 (counts 3, 8, and 10); and perjury in violation of OCGA § 16-10-70 (count 6). The charges stemmed from the November 2010 shooting death of Sneiderman's husband; Sneiderman's conduct during the Dunwoody Police Department's investigation of the fatal shooting; and Sneiderman's testimony during the February 2012 murder trial of Hemy Neuman, who was her workplace supervisor at the time of the shooting. At the

murder trial, Neuman admitted that he had an affair with Andrea Sneiderman; that he planned to murder her husband; and that he shot and killed her husband, Russell Sneiderman. *Neuman v. State*, 297 Ga. 501, 501 (773 SE2d 716) (2015).[1] For the following reasons, we affirm.

1. Sneiderman contends that the trial court erred by denying her general demurrer, filed during the jury trial, in which she asserted that counts 1 and 2 of the indictment were void because they failed to allege all the essential elements of the charged crimes.

"A general demurrer challenges the very validity of the indictment and may be raised anytime. . . ." *State v. Eubanks*, 239 Ga. 483, 485 (238 SE2d 38) (1977). "An indictment is void to the extent that it fails to allege all the essential elements of the crime or crimes charged." *Henderson v. Hames*, 287 Ga. 534, 538 (697 SE2d 798) (2010). The rule that a grand jury indictment must set forth all the essential elements of the charged offense serves to satisfy the Six Amendment's due process requirement

---

[1] Neuman pled not guilty by reason of insanity on the murder charge and was found guilty but mentally ill. *Neuman*, 297 Ga. at 501. On appeal, the Supreme Court found that the evidence was sufficient for the jury to find Neuman guilty and to reject his insanity defense. Nevertheless, the Supreme Court reversed the conviction on the basis that the trial court committed harmful error by admitting evidence protected by the attorney-client privilege. Id. at 501-510.

that the defendant "be informed of the nature and cause of the accusation," and the Fifth Amendment's indictment requirement ensuring that a grand jury return an indictment only when it finds probable cause to support all the essential elements of the offense. *Smith v. Hardrick*, 266 Ga. 54, 54-55 (464 SE2d 198) (1995).

As to count 1, Sneiderman claims the indictment was void for failing to allege the essential mens rea or intent element contained in the charged offense under OCGA § 16-10-50. The relevant portions of OCGA § 16-10-50 provide that:

> (a) A person commits the offense of hindering the apprehension or punishment of a criminal when, with intention to hinder the apprehension or punishment of a person whom he knows or has reasonable grounds to believe has committed a felony or to be an escaped inmate or prisoner, he:
>     (1) Harbors or conceals such person; or
>     (2) Conceals or destroys evidence of the crime.

As set forth in the indictment, count 1 charged Sneiderman

> with the offense of Hindering the Apprehension of a Criminal in violation of O.C.G.A. 16-10-50 for the said accused person, in the County of DeKalb and State of Georgia, between the dates of November 18, 2010, and January 5, 2011, did knowingly and willfully conceal facts and destroy evidence of Hemy Neuman's guilt in the murder of Russell Sneiderman, which she knew was evidence of the crime of Murder, to wit: the accused destroyed text messages and a record of telephone calls between herself and Hemy Neuman exchanged on the date of the murder, concealed her romantic relationship with Hemy Neuman from police, and concealed her knowledge of Hemy Neuman's culpability in the murder of Russell Sneiderman.

3

"The mens rea of [OCGA § 16-10-50] is an intent to hinder the apprehension or punishment of a person who the actor knows or has reason to believe is either (1) a felon, (2) an escaped inmate, or (3) an escaped prisoner." Robert E. Cleary, Jr., Kurtz Criminal Offenses and Defenses in Georgia, (I) Impending Arrest or Prosecution, (II) (A) (2014 ed.). Sneiderman contends that count 1 is void because it failed to expressly charge the essential mens rea element of OCGA § 16-10-50 that she intended to hinder the apprehension or punishment of Neuman who she knew or had reason to believe was a felon.

We find that count 1 of the indictment sufficiently set forth the essential mens rea element of OCGA § 16-10-50. Count 1's express reference to OCGA § 16-10-50 on which the charge was based, along with the other factual allegations, adequately informed Sneiderman of the charged offense. *State v. Howell*, 194 Ga. App. 594, 595 (391 SE2d 415) (1990). Moreover, count 1 further alleged that Sneiderman "did knowingly and willfully conceal facts and destroy evidence of Hemy Neuman's guilt in the murder of Russell Sneiderman, which she knew was evidence of the crime of Murder. . . ." These allegations necessarily raised an inference that Sneiderman acted with the intent required under OCGA § 16-10-50 to hinder the apprehension or punishment of Neuman who she knew was a felon. The failure to expressly allege the

4

essential element of mens rea or intent does not render an indictment defective "where the indictment employs language that necessarily raises an inference that the requisite criminal intent existed." *Morris v. State*, 310 Ga. App. 126, 130 (712 SE2d 130) (2011) (citation and punctuation omitted); *Humphrey v. State*, 231 Ga. 855, 861 (204 SE2d 603) (1974). It follows that the allegations of count 1 warranted an inference that the grand jury found probable cause to support the essential mens rea element contained in OCGA § 16-10-50. The trial court did not err by denying the general demurrer to count 1.

As to count 2, Sneiderman claims the indictment was void for failing to allege the essential element of materiality contained in the charged offense under OCGA 16-10-20. The relevant portions of OCGA § 16-10-20 provide as follows:

> A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact . . . in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

As set forth in the indictment, count 2 charged Sneiderman

> with the offense of Concealment of Facts in Matters Within the Jurisdiction of the Dunwoody Police Department in violation of O.C.G.A. 16-10-20 for the said accused person, in the County of DeKalb

5

and State of Georgia, on or about the 24th day of November, 2010, did knowingly and willfully conceal from representatives of the Dunwoody Police Department the existence of a romantic relationship between herself and Hemy Neuman, while that Department was conducting an official investigation into the murder of Russell Sneiderman.

Because count 2 involved the portion of OCGA § 16-10-20 dealing with concealment of a fact, an essential element of the offense was proof that the concealed fact was material in a matter within the jurisdiction of the alleged department or agency. Kurtz, supra, at (P) Perjury and Related Crimes, (IX) (2014 ed.). Sneiderman contends that count 2 is void because it failed to expressly charge that the concealed fact (a romantic relationship between herself and Neuman) was material to decisions of the Dunwoody Police Department in its investigation into the murder of Russell Sneiderman.

We find that count 2 sufficiently set forth the essential element of materiality contained in OCGA § 16-10-20. Count 2 alleged that, in violation of OCGA § 16-10-20, Andrea Sneiderman had a romantic relationship with Neuman, and that, while the Dunwoody Police Department (DPD) was conducting an investigation into the murder of Russell Sneiderman, she knowingly and willfully concealed that relationship from DPD representatives. Count 2's express reference to OCGA § 16-10-20 on which the charge was based, along with the other factual allegations,

6

adequately informed Sneiderman of the charged offense. *Howell*, 194 Ga. App. at 595. Although count 2 did not expressly allege that the concealed relationship was material to decisions of the DPD in its murder investigation, the failure to expressly allege the essential element of materiality in OCGA § 16-10-20 did not render the indictment defective because the language of the indictment necessarily raised an inference of the requisite materiality. *Morris*, 310 Ga. App. at 130; *Humphrey*, 231 Ga. at 861; see *United States v. McGough*, 510 F2d 598, 602 (5th Cir. 1975) (construing similar provisions contained in 18 USC § 1001 and concluding that indictment need not expressly allege essential element of materiality if it warrants an inference of materiality). The allegations that Sneiderman "knowingly and willfully" concealed her romantic relationship with Neuman from DPD representatives while the DPD was investigating the murder of Russell Sneiderman necessarily raised an inference that she acted intentionally to conceal that fact from the DPD representatives with knowledge that the fact was material (i.e. of consequence) to the investigation. See *Byrd v. State*, 216 Ga. App. 316, 318 (454 SE2d 594) (1995) (as used in OCGA § 16-10-20, "knowingly" included knowledge of falsity of the statement at issue; "willful" means intentional and deliberate). Accordingly, the allegations of count 2 warrant an inference that the grand jury found probable cause

7

to support the essential element of materiality contained in the offense charged under OCGA § 16-10-20. The trial court did not err by denying the general demurrer to count 2.

2. Sniderman contends that the evidence was insufficient to support the guilty verdicts on counts 8 and 10.

Count 8 charged that Sniderman made a false statement in violation of OCGA § 16-10-20 as follows: that, on or about November 19, 2010, during the DPD investigation into the murder of Russell Sniderman, Andrea Sniderman knowingly and willfully made a false statement to a DPD officer, to wit: "she told [the officer] that she had made it clear to Hemy Neuman that she did not want him to pursue her romantically." According to Sniderman, because there was evidence that she told Neuman she did not want a romantic relationship with him, this evidence established that the statement alleged in count 8 was truthful. But in support of count 8, the State points to other evidence that Sniderman had a physically intimate relationship with Neuman; that they shared hotel rooms on business trips; that they exchanged romantic emails; and that only weeks before Neuman murdered Sniderman's husband, she and Neuman were seen in public dancing together and kissing.

8

Count 10 charged that Sneiderman made a false statement in violation of OCGA § 16-10-20 as follows: that, on or about January 5, 2011, Sneiderman knowingly and wilfully made a false statement to two DPD officers in a matter within the jurisdiction of the DPD, to wit: she denied that she was with Hemy Neuman in Longmont, Colorado in July 2010. Sneiderman says the State failed to prove this count because the evidence showed that she falsely denied being with Neuman in Denver in July 2010, and that the officers did not ask her if she was with Neuman in Longmont, a suburb of Denver. In support of count 10, the State produced evidence of the following events which occurred in July 2010: While Sneiderman was attending an out-of-town business conference in Longmont, a Denver suburb, Neuman (her supervisor) flew from Atlanta to Denver; Sneiderman picked up Neuman at the Denver airport; they drove together to Sneiderman's hotel in Longmont; Sneiderman changed her hotel reservation from one guest to two and requested a king size bed; and, after the conference, Sneiderman and Neuman flew together from Denver to Atlanta.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and the evidence is viewed in a light most favorable to the verdict. This Court does not assume the jury's role as factfinder by weighing the evidence or by determining the credibility of witnesses, but only determines whether the evidence was

9

sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC[t] 2781, 61 LE2d 560) (1979), for a rational trier of fact to find [the defendant] guilty of the charged offenses beyond a reasonable doubt.

*Parker v. State*, 220 Ga. App. 303, 303 (469 SE2d 410) (1996) (citation and punctuation omitted). Sneiderman contends only that the evidence was insuffcient to support the guilty verdicts, not that she was surprised or prejudiced by any material variance between the allegations of the indictment and the evidence at trial. Applying the above standards, we find the evidence was sufficient to support Sneiderman's convictions on counts 8 and 10. *Jackson v. Virginia*, supra.

3. Sneiderman contends that her conviction for perjury must be reversed because the State failed to prove that her alleged false testimony was material, and failed to produce required corroborating evidence.[2]

Sneiderman was found guilty on count 6 charging that she committed the offense of perjury in violation of OCGA § 16-10-70 when, in February 2012, she testified under oath at Neuman's murder trial, and made a false statement – "that she was not romantically involved with Hemy Neuman" – which was material to a point

[2] The jury found Sneiderman guilty of perjury as charged in counts 6, 9, 11, and 12 of the indictment. The convictions on counts 9, 11, and 12 were vacated by operation of law when the trial court merged the convictions on those counts into the conviction on count 6. *Collins v. State*, 327 Ga. App. 590, 592 (760 SE2d 606) (2014).

10

in question. Under OCGA § 16-10-70, "[a] person to whom a lawful oath or affirmation has been administered commits the offense of perjury when, in a judicial proceeding, he knowingly and willfully makes a false statement material to the issue or point in question." Thus, the essential elements of the offense are: (1) knowingly and wilfully making a false statement, (2) material to the issue or point in question, (3) while under oath in a judicial proceeding. *Walker v. State*, 314 Ga. App. 714, 717 (725 SE2d 771) (2012); *Williams v. State*, 244 Ga. App. 692, 696 (536 SE2d 572) (2000).

We find no merit to Sneiderman's claim that the State failed to prove that the alleged false testimony was material to the issue or point in question. "The test of materiality [under OCGA § 16-10-70] is whether the alleged false statement could have influenced the decision as to the question at issue in the judicial proceeding in which the perjury is alleged to have been committed." *Walker*, 314 Ga. App. at 717 (citation and punctuation omitted). "[T]he actual effect of a false statement has no bearing on its materiality, and the guilt of one who has falsely sworn does not depend on the result of the proceedings in which it occurred." *Hardison v. State*, 86 Ga. App. 403, 403-404 (71 SE2d 525) (1952). It is not required that the alleged false statement be material to the main issue, "but it is sufficient if it relates to an issue which is only

11

collaterally involved." *Hardeman v. State*, 58 Ga. App. 425, 427 (198 SE 833) (1938); *Wilson v. State*, 115 Ga. 206, 207 (41 SE 696) (1902).

> The materiality of the false testimony may be shown by the record of the proceedings in which the testimony was given, or by the testimony there given, or by all or so much of the pleadings therein as show the issues, together with such other facts proved on the trial as tend to show the testimony to be on a material issue. Whether the false statement was material is normally an issue for the jury.

*Walker*, 314 Ga. App. 717 (citations and punctuation omitted).

In support of the count 6 perjury charge, the State presented the following evidence: At the February 2012 murder trial, there was evidence that Neuman shot and killed Russell Sneiderman, and that, at the time of the shooting, Neuman was romantically involved with Andrea Sneiderman, the victim's wife. Neuman admitted he shot and killed Russell Sneiderman, but asserted he was not guilty by reason of his insanity, including delusions he had about a romantic relationship with Andrea Sneiderman. There was also evidence that, during the murder trial, Andrea Sneiderman wilfully and knowingly gave false statements under oath denying that she had any romantic relationship with Neuman. Accordingly, the State's evidence established that an issue at the murder trial was Neuman's mental state and motivation when he shot and killed Russell Sneiderman – whether Neuman knew

right from wrong and was motivated by his romantic relationship with the victim's wife, Andrea Sneiderman, or whether he acted without knowing right from wrong because of mental illness asserted in support of his insanity defense. Sneiderman's false statement denying any romantic relationship with Neuman was material because it could have influenced the decision on that issue.

As to the claim that the State failed to produce required corroborating evidence, "[a] conviction for perjury requires either the testimony of two witnesses or that of one witness and corroborating circumstances to support it." *Williams*, 244 Ga. App. at 696; OCGA § 24-14-8.[3] "The determination of the weight and sufficiency of the corroboration is a matter for the jury." *Dixon v. State*, 172 Ga. App. 803, 804 (324 SE2d 780) (1984). The State satisfied the corroboration requirement as to count 6 by introducing evidence which tended to independently establish that Sneiderman testified falsely under oath when she denied that she and Neuman had a romantic relationship. The State produced testimony from a bartender at a night club who saw Sneiderman and Neuman in October 2010 at the club on the dance floor pressing their

---

[3] OCGA § 24-14-8 provides in relevant part: "The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . prosecutions for perjury . . . the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness."

13

bodies together while Neuman cupped Sneiderman's buttocks with his hands and they engaged in "passionate kiss[ing]." The State also produced corroborating circumstances in the form of romantic email messages between Neuman and Sneiderman, and evidence that they shared hotel rooms on out-of-town business trips.

4. Sneiderman contends that the State failed to produce evidence sufficient to support her conviction on count 2. Count 2 charged that, on or about November 24, 2010, while the DPD was investigating the murder of her husband, she violated OCGA § 16-10-20 by knowingly and wilfully concealing from DPD representatives that she had a romantic relationship with Neuman. See division 1, supra. Sneiderman claims the evidence was insufficient because the State failed to prove she had a duty to disclose to the DPD the existence of her romantic relationship with Neuman.

As set forth in division 1, supra, the concealment offense charged in count 2 is set forth in the following portion of OCGA § 16-10-20:

> A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact . . . in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

14

Accordingly, the essential elements of the offense were: (1) Sneiderman concealed a fact by trick, scheme, or device; (2) the fact was material; (3) Sneiderman acted knowingly and wilfully; and (4) Sneiderman concealed the material fact in a matter within the jurisdiction of the DPD. The concealment offense in OCGA § 16-10-20 does not apply to passive non-disclosure; rather, the statutory requirement that "concealing a fact [be accomplished] by 'scheme, trick or device' requires an affirmative act on the part of a defendant." *Marcus v. State*, 249 Ga. 345, 345 (290 SE2d 470) (1982). As our Supreme Court has recognized, OCGA § 16-10-20 is modeled on the longstanding federal false statements statute, 18 USC § 1001, which criminalizes affirmative false statements and concealment of material facts designed to deceive and harm lawful governmental functions. *Haley v. State*, 289 Ga. 515, 523-528 (712 SE2d 838) (2011). Accordingly, "as properly construed, [OCGA] § 16-10-20 may only be applied to conduct that persons of common intelligence would know was wrongful because it could result in harm to the government." Id. at 528.

In the present case, the evidence established as a matter of law that Sneiderman engaged in conduct that a person of common intelligence would know was wrongful because it could result in harm to the DPD's investigation of her husband's murder. Sneiderman voluntarily responded to questions about Neuman posed to her by DPD

15

officers conducting the murder investigation. When Sneiderman responded to those questions, this created a duty to answer truthfully and disclose relevant information, the violation of which was punishable under OCGA § 16-10-20. See *United States v. Arcadipane*, 41 F3d 1, 5 (1st Cir. 1994) (construing similar provisions of 18 USC § 1001 and concluding that "section 1001 *in and of itself* constitutes a blanket proscription against the making of false statements to federal agencies.").[4] Sneiderman responded to the officers' questions giving them false and misleading information about her relationship with Neuman deliberately designed to deceive the officers and impede the investigation by creating the false impression that Neuman had no motive to murder her husband. The State produced evidence that, on or about November 24, 2010, Sneiderman falsely told a DPD officer investigating the murder that Neuman had made only one romantic overture to her which she had rejected, and that she and Neuman were just friends and nothing more. But evidence showed to the

---

[4] See *Bryson v. United States*, 396 U. S. 64, 71-72 (90 SCt 355, 24 LE2d 264) (1969) (construing analogous provisions of 18 USC § 1001 prohibiting false statements, and concluding that: "A statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under § 1001. . . . Our legal system provides methods for challenging the Government's right to ask questions – lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood."

16

contrary that Neuman had declared his love for Sneiderman and asked her to marry him, and that Sneiderman and Neuman had a romantic relationship, which included physical intimacy. The evidence was sufficient for the jury to find beyond a reasonable doubt that Sneiderman engaged in an affirmative act by giving false responses to the officers' questions, and that this was a trick, scheme, or device by which she knowingly and wilfully concealed a material fact in the murder investigation within the jurisdiction of the DPD. The evidence was sufficient to support Sneiderman's conviction on count 2. OCGA § 16-10-20; *Jackson v. Virginia*, supra.

5. Sneiderman contends that the evidence was insufficient to support her conviction on count 3 charging that, on or about January 5, 2011, she violated the false statement provisions of OCGA § 16-10-20 by knowingly and wilfully making a false statement to DPD officers in a matter within the jurisdiction of the DPD by falsely telling the officers "that she never suspected that Hemy Neuman was involved in the murder of Russell Sneiderman prior to December 28, 2010." Sneiderman does not dispute that she made the statement on January 5, 2011 or that it was false. She claims that, because Neuman was arrested on the murder charge on January 4, 2011,

17

there was no evidence to support an essential element of the charged offense – that the false statement was made in a matter within the jurisdiction of the DPD.

An essential element of a false statement offense alleged in count 3 is that the false statement was made "in any matter within the jurisdiction of any department or agency" of state or local government. OCGA § 16-10-20. The term "jurisdiction" is not given a narrow or technical meaning as used in OCGA § 16-10-20. *Tesler v. State*, 295 Ga. App. 569, 577 (672 SE2d 522) (2009). Rather, the term "jurisdiction" as used in OCGA § 16-10-20 "covers all matters confided to the authority of an agency or department . . . [and] mean[s] simply the power to act upon information when it is received." Id. There was evidence that DPD officers questioned Andrea Sneiderman on January 5, 2011 as part of an ongoing DPD investigation into the murder of Russell Sneiderman. The evidence was sufficient for the jury to conclude that Sneiderman's false statement to the DPD officers on January 5, 2011, was made in a matter within the jurisdiction of the DPD. The evidence was sufficient to support the conviction on count 3. OCGA § 16-10-20; *Jackson v. Virginia*, supra.

6. There is no merit to Sneiderman's claim that the trial judge violated OCGA § 17-8-57 by giving a charge to the jury on the offense of perjury that improperly

18

expressed the judge's opinion with respect to what had been proved on the essential element of materiality.

As set forth in division 3, supra, the essential elements of the offense of perjury are: (1) knowingly and wilfully making a false statement, (2) material to the issue or point in question, (3) while under oath in a judicial proceeding. OCGA § 16-10-70. Accordingly, a defendant cannot be convicted of perjury unless the false testimony is material to an issue in the case. The trial judge's jury charge on the element of materiality included an instruction on the principle that, when a witness gives testimony material to an issue in the case, the witness' credibility becomes collaterally material to the issue, therefore "false testimony going to the credibility of that witness likewise can be considered material." *Walker*, 314 Ga. App. at 717; *Wilson*, 115 Ga. at 207-208.

Under former OCGA § 17-8-57, "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[5] A court's

_____

[5] Effective July 1, 2015, the substantially similar provisions of OCGA § 17-8-57 (a) (1) provide: "It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused."

19

charge to the jury violates OCGA § 17-8-57 when it "assumes certain things as facts and intimates to the jury what the judge believes the evidence to be." *Mullinax v. State*, 255 Ga. 442, 445 (339 SE2d 704) (1986). Contrary to Sneiderman's contention, nothing in the judge's charge to the jury assumed facts with respect to the issue of materiality or expressed an opinion that materiality had been proved.

7. Sneiderman contends that the trial court erred by admitting into evidence under the necessity exception to the hearsay rule the testimony of Melanie White regarding non-testimonial statements made to her by Neuman. Over the defense's hearsay objection, White testified that in the summer of 2010 Neuman told her that he had met another woman at work named Andrea, who was married; that he and Andrea had grown close on a business trip to Greenville, South Carolina during which she "gave in"; and that on another business trip to London, he and Andrea kissed and fondled each other but did not have intercourse.

Non-testimonial[6] hearsay evidence may be admitted under the necessity exception set forth in OCGA § 24-8-807,[7] which provides:

> A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that:
> (1) The statement is offered as evidence of a material fact;
> (2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

[6] If hearsay is non-testimonial, the Confrontation Clause is not implicated, and admissibility against a criminal defendant is governed by the applicable rules of evidence. *Whorton v. Bockting*, 549 U. S. 406, 413-414, 420 (127 SCt 1173, 167 LE2d 1) (2007); *Jackson v. State*, 288 Ga. 213, 215 (702 SE2d 201) (2010); *Stinski v. State*, 286 Ga. 839, 848, n. 2 (691 SE2d 854) (2010). The hearsay statements at issue are clearly non-testimonial. *Bulloch v. State*, 293 Ga. 179, 183-184, n. 3 (744 SE2d 763) (2013); *Jackson*, 288 Ga. at 215.

[7] Effective January 1, 2013, the necessity exception in former OCGA § 24-3-1 (b) was replaced by OCGA § 24-8-807, which applies in the present case. The new rule adds a requirement not contained in the pre-2013 rule – that the proponent give notice in advance of trial or hearing of intent to offer a hearsay statement under the exception. The State gave the required notice. As to other requirements set forth in OCGA § 24-8-807, because of similarities with former OCGA § 24-3-1 (b) and Federal Rule of Evidence 807, cases construing those provisions are helpful in construing § 24-8-807. Paul S. Milich, Courtroom Handbook on Georgia Evidence, N1 (2015 ed.). Also effective January 1, 2013, the former rule that hearsay has no probative value even in the absence of an objection was replaced by the rule set forth in the new Evidence Code, which provides: "'Hearsay shall not be admissible except as provided by [OCGA §§ 24-8-801 through 24-8-807]; provided, however, that if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.' OCGA § 24-8-802." *Cisneros v. State*, 334 Ga. App. 659, 665, n. 10 (780 SE2d 360) (2015).

(3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

However, a statement may not be admitted under this Code section unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

It is undisputed that the declarant, Neuman, was unavailable to testify. See *Brown v. State*, 291 Ga. 892, 896 (734 SE2d 23) (2012) (for the admission of non-testimonial hearsay under the necessity exception of former OCGA § 24-3-1 (b), the declarant must be unavailable). Although OCGA § 24-8-807 does not expressly require that the declarant be unavailable, "if the declarant is available then the proponent clearly has comparable evidence and thus there is no necessity to admit the hearsay under [§ 24-8-807]." Paul S. Milich, Courtroom Handbook on Georgia Evidence, N1, Comments (No Comparable Evidence) (2015 ed.); *Rai v. State*, 297 Ga. 472, 477 (775 SE2d 129) (2015) (necessity for admission shown by unavailability of declarant due to death or some other cause). As to other requirements, Sneiderman contends that the hearsay statements admitted by the trial court lacked circumstantial guarantees of trustworthiness required under OCGA § 24-8-807.

> Trustworthiness is assessed under the totality of the circumstances, including any motives the declarant may have had to be untruthful in making the statement; the consistency of the statement with other statements made by the declarant; and the extent to which the declarant enjoyed a relationship of confidence with the witness.

*Rai*, 297 Ga. at 477. The record shows that White, a real estate agent, helped Neuman and his family buy a house in 2006, and subsequently contacted Neuman about twice a year for possible business referrals. In the summer of 2010, Neuman contacted White to ask for advice about the possible sale of his house, and, during the conversation, revealed to White that he was having problems in his marriage and was fond of a married woman (Andrea) he met at work. After White provided Neuman with the real estate information he requested, Neuman subsequently made 20 to 30 additional unsolicited telephone calls to White during the next couple of months in which he gave ongoing details of his romantic relationship with Andrea and asked White for advice. White consistently told him to leave Andrea alone and go home to his wife and kids. During this period, evidence showed that Neuman also forwarded to White copies of email conversations between himself and Andrea that corroborated Neuman's statements about the developing romantic relationship, and asked White to read the emails and give him advice. Although Neuman did not have a close confidential relationship with White, the record showed other circumstantial

guarantees of trustworthiness. On 20 to 30 occasions over a period of months, Neuman made consistent statements to White about his developing romantic relationship with Andrea Sneiderman – a personal matter that he had no motive to lie about. Neuman's numerous oral statements to White about his relationship with Sneiderman were consistent with the email evidence of the relationship that Neuman sent to White, and with other evidence in the case establishing the existence of the romantic relationship between Neuman and Sneiderman. Although Sneiderman points to evidence that Neuman was suffering from mental illness at the time, and that the jury in his murder trial found him guilty but mentally ill, other evidence at the murder trial showed that Neuman admitted he had an affair with Sneiderman. *Neuman*, 297 Ga. at 501. On this record, we find that the trial court did not abuse its discretion by determining that there were circumstantial guarantees of trustworthiness; that the statements were evidence of a material fact and more probative than other evidence the State could procure; and that the evidentiary rules and the interests of justice were best served by admission of the statements pursuant to the necessity exception in OCGA § 24-8-807. *Rai*, 297 Ga. at 477-478. Finally, even assuming that the trial court erred by admitting the hearsay statements pursuant to the necessity exception, any error was rendered harmless by the admission of other testimony and evidence

24

generally covering the same subject matter. *Johnson v. State*, 293 Ga. 641, 643 (748 SE2d 896) (2013); *Roper v. State*, 263 Ga. 201, 202-203 (429 SE2d 668) (1993), overruling on other grounds recognized in *Clark v. State*, 271 Ga. 6, 10 (515 SE2d 155) (1999).

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*