In the Supreme Court of Georgia

Decided:   June 20, 2016

S16A0440.   STARLING v. THE STATE.

HUNSTEIN, Justice.

Appellant Arthur (a/k/a "Ricky") Starling was convicted of murder, aggravated assault, third degree child cruelty, and related offenses in connection with the July 4, 2010 shooting death of his long-time girlfriend at her home in the presence of several of her family members.   Starling now appeals, contending that his trial counsel rendered constitutionally ineffective assistance and that the trial court erred in admitting his statements to law enforcement officers.   Finding no error, we affirm.[1]

---

[1] Starling was indicted in August 2010 by a Randolph County grand jury on one count of malice murder, one count of felony murder, four counts of aggravated assault, seven counts of third degree child cruelty, and one count each of possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon.   At the conclusion of a jury trial held August 1-4, 2011, Starling was found guilty on all counts except that for felony murder, on which the jury did not return a verdict.   The trial court thereafter sentenced Starling to life in prison without the possibility of parole for the malice murder, plus various consecutive and concurrent terms of imprisonment totaling an additional 45 years.   Starling filed a timely motion for new trial on August 30, 2011, which he amended on October 23, 2014.   Following a hearing, the trial court denied the new trial motion on July 14,

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. In July 2010, Starling was living with his girlfriend, Carolyn Johnson, in a Randolph County home they shared with Johnson's daughter, son, niece, and grandchildren. The couple's relationship was marked by frequent conflict, and, on the eve of the shooting, witnesses reported, Starling had been crying and "falling all on the ground" over his suspicion that Johnson was romantically involved with another man. Johnson did not come home that night, and Starling placed more than two dozen phone calls to her cell phone number between 9:00 p.m. on July 3 and 3:00 a.m. on July 4.

On the morning of July 4, after Johnson had returned home, Starling attempted to summon Johnson into the couple's bedroom. Johnson refused, told Starling to leave the house, and threatened to call the police; Starling responded by shooting Johnson with a shotgun. Thereafter, Starling locked the back door to the house; threatened Johnson's daughter with the gun as she attempted to call 911; attempted to kick down the door to the bathroom where the daughter had

2015. Starling filed his notice of appeal on July 24, 2015. The appeal was docketed to the January 2016 term of this Court and was thereafter submitted for decision on the briefs.

2

taken refuge; trained the shotgun on Johnson's nephew as he emerged from his bedroom; attempted to kick down the door to another bedroom where Johnson's niece was sheltering her son and six other children; and finally shot Johnson again, as she lay on the floor begging him to spare her life. Starling then turned the gun on himself, inflicting a wound that required the amputation of his right arm. Johnson died at the scene from the combination of three gunshot wounds, one of which was consistent with being shot at from above while lying supine.

After the shooting, Starling made two separate statements to law enforcement officers, both of which were audio-recorded and played for the jury at trial. In his first statement, given five days after the crimes, while Starling was still hospitalized, Starling admitted to having shot Johnson, stating that he had "just snapped." He also claimed that he had not known the gun was loaded when he fired it and that he had not intended to kill Johnson. Three days after the first statement, while at the Randolph County Jail, Starling made an additional statement, again telling the officers he had "just flipped," while also again claiming that he had not known the gun was loaded. He subsequently admitted, however, that the 12-gauge pump shotgun he had used required him to pump between trigger pulls and that, thus, any shots fired after the first could

3

not have been accidental.  He also admitted to failing to render aid to Johnson at any time after shooting her.

Prior to trial, Starling underwent a mental health evaluation conducted by court-appointed psychologist Dr. John Parmer, who concluded that Starling, while having a low IQ and untreated diabetes, was neither incompetent to stand trial nor mentally ill such that he lacked the capacity to distinguish right from wrong at the time of the shooting.  Dr. Parmer was called by the defense at trial and, while testifying that Starling's untreated diabetes could have resulted in impaired judgment and reasoning, on cross-examination he reiterated that he had found no indication that Starling was mentally ill or delusional at the time of the crimes.

The State also adduced evidence that Starling had shot Johnson's former husband in 1992 and that Johnson had reported Starling to police in 1999 for assaulting her with a knife.

1.  Though Starling has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Starling was guilty of all the crimes of which he was convicted.  Jackson v. Virginia, 443

U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In two enumerations of error, Starling contends that his trial counsel rendered ineffective assistance in failing to engage an expert witness to evaluate his mental state at the time of the crimes in support of an insanity defense and in failing to offer such expert testimony at trial. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

With regard to the assessment of Starling's mental state, Starling's retained trial counsel testified at the motion for new trial hearing that he had discussed with Starling and his family the possibility of hiring an expert but that the idea was not pursued due to the anticipated cost. Trial counsel also testified that he had believed Dr. Parmer's testimony could have been helpful to the defense, to the extent it supported the conclusion that Starling "was not capable of making good choices." Counsel conceded, however, that the State's cross-examination of Dr. Parmer largely undercut any benefits of his testimony on direct and that, in hindsight, he probably should have insisted more forcefully that the family consider hiring an expert.

Even assuming arguendo that counsel's failure to more aggressively "sell" Starling and his family on the idea of an expert could be characterized as professionally deficient performance – an assertion as to which we are highly skeptical, see Strickland, 466 U. S. at 689 ("distorting effects of hindsight" should play no role in the assessment of counsel's performance) – Starling's ineffectiveness claims must fail because he has adduced no evidence of prejudice. Specifically, Starling has failed to identify any expert who would have testified in support of his claim of insanity or otherwise in any manner that

6

would have been helpful to Starling's defense. Having failed to establish the existence of any expert witness whose testimony may have supported his defense, Starling has failed to demonstrate that a more robust effort by trial counsel to procure an expert would in reasonable probability have changed the outcome of Starling's trial. See, e.g., Ballard v. State, 297 Ga. 248 (6) (f) (773 SE2d 254) (2015) (without a proffer of the testimony that the defendant claims counsel should have presented, defendant cannot show prejudice required to establish ineffective assistance); Grant v. State, 295 Ga. 126 (5) (c) (757 SE2d 831) (2014) (same).

3. In three separate enumerations of error, Starling contends that the trial court erred in admitting at trial the statement he made to law enforcement officers during his hospitalization. Specifically, Starling asserts that the trauma of the shooting, his recent surgery, and the pain medications he was taking at the time rendered him incapable of knowingly and voluntarily waiving his rights and making a statement. However, "[t]he fact that a defendant is hospitalized, is undergoing treatment, is in pain, or is taking pain medication does not 'in and of itself[] render any statement made involuntary.'" Rivera v. State, 282 Ga. 355, 359 (4) (a) (647 SE2d 70) (2007). As established at the pre-trial Jackson-

Denno[2] hearing, prior to speaking with Starling, investigator Jerry Farrow inquired about Starling's fitness to be interviewed and was told by an attending nurse that, though Starling was taking a mild sedative, he should be "fine" to speak with law enforcement. Officer Farrow testified further that Starling appeared rational and coherent and, upon being approached, indicated his willingness to discuss the shooting. As reflected in the audio recording of this interview, Officer Farrow advised Starling of his Miranda[3] rights, which Starling affirmed he understood and, through the signing of a waiver form, agreed to waive. Officer Farrow testified that he had neither made Starling any promises nor issued any threats in connection with the interview, and there is no evidence or allegation to the contrary. In sum, the evidence supports the trial court's finding that Starling knowingly and voluntarily gave his statement, and there was no error in its admission at trial. See Bunnell v. State, 292 Ga. 253 (2) (735 SE2d 281) (2013) (affirming trial court's finding that, under totality of circumstances, defendant's statement was voluntary).

Judgment affirmed. All the Justices concur.

_____

[2]Jackson v. Denno, 378 U.S. 368 (84 SCt 1774) (12 LE2d 908) (1964).

[3]Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

8