310 Ga. 708
FINAL COPY

S20A1571.  HENDERSON v. THE STATE.

BOGGS, Justice.

After a 2018 jury trial, Aquillous Rayon Henderson was found guilty of malice murder and other offenses in connection with the shooting death of Timothy Hill.  His amended motion for new trial was denied, and he appeals, asserting two enumerations of error: the trial court's denial of his motion to suppress his custodial statement and its exclusion of Henderson's testimony that Hill said he had been in prison. Finding no reversible error, we affirm.[1]

---

[1] The shooting occurred on July 4, 2016. On September 29, 2016, a DeKalb County grand jury indicted Henderson for malice murder, felony murder, aggravated assault, and possession of a firearm during commission of a felony.  Henderson was tried before a jury from July 30 to August 3, 2018, and found guilty of all charges. On September 20, 2018, Henderson was sentenced to serve life in prison without the possibility of parole for malice murder, plus five years to be served consecutively for the firearms charge. The trial court merged the aggravated assault count into the malice murder conviction, and the felony murder conviction was vacated by operation of law. On September 19, 2018, Henderson's trial counsel filed a premature motion for new trial, which was withdrawn. On September 27, 2018, Henderson's trial counsel filed a timely second motion for new trial, which was amended by appellate counsel on January 7, 2020. After a hearing on January 17, 2020, the

1. Construed in the light most favorable to the jury's verdicts, the evidence showed that Hill and his brother, Quinton Newberry, were on their way to a Fourth of July cookout at their aunt's house when they stopped at a gas station convenience store to pick up cigarettes and beer. Henderson, an unidentified woman, and a man he referred to as "Bam" were parked at the gas pumps. Henderson did not know Hill or Newberry, but Newberry testified that Henderson began yelling at them, "talking crazy," and accusing Hill and Newberry of stealing his parking spot. Hill responded that he had not taken Henderson's spot and went towards the store. Henderson continued to yell at Newberry, who replied that they had done nothing to Henderson and walked after Hill. Henderson followed them, saying, "I got something for you all." Hill and Newberry ignored him and entered the store.

Hill and Newberry got beer from the cooler and went to the counter to purchase cigarettes. Newberry looked up, noticed Bam

motion was denied on January 27, 2020. Henderson's notice of appeal was filed on February 19, 2020, and the case was docketed in this Court to the August 2020 term and submitted for a decision on the briefs.

entering the store, and told Hill, "Bro, these guys done walked in the store at us." Suddenly, Henderson ran into the store, his hands in his waistband, again "talking crazy" about a parking spot. Hill and Newberry responded, "What's wrong with you, man? We ain't did nothing to you. Go ahead on about your business."

Newberry testified that, at that point, he noticed a gun in Henderson's pants, and shouted, "Gun, bro, gun!" while attempting to push Hill out of the way. Henderson ducked behind Bam, who was holding the door open, reached around Bam, and shot Hill in the abdomen. Henderson and Bam then ran outside to their car and sped away. Two people called 911, while Newberry and a woman who was in the store attempted to help Hill. Paramedics arrived shortly afterward, treated Hill, and transported him to the hospital, but he died from blood loss as a result of the gunshot wound, which pierced his liver, pancreas, and aorta.

The encounter was recorded on the store's surveillance video equipment and played for the jury. The video recording showed Henderson entering the store with his hands already inside his

waistband and then accosting and arguing with Hill and pushing him in the chest. Hill did not respond physically. Bam then walked into view and appeared to intervene, at which point Henderson turned and left the store, walking in front of Bam. But in the doorway, Henderson suddenly turned around and reached around Bam's body to fire a shot at Hill. Neither Hill nor Newberry displayed or used a weapon at any time.

Henderson gave a recorded statement to the police as well as a written statement. He initially told investigators that he was not at the gas station that day, but when confronted with the video recording, he changed his story and admitted that he was there, but claimed that Bam had shot Hill because Hill and his brother were gang members who had a dispute with Bam. At trial, Henderson testified and acknowledged that he shot Hill, but claimed that he did so in self-defense after Hill threatened him.

Henderson has not challenged the sufficiency of the evidence to support his convictions. However, as is this Court's current practice in murder cases, we have reviewed the record to determine

4

the legal sufficiency of the evidence supporting his convictions.[2] We conclude that the evidence presented at trial and summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Henderson was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. In Henderson's first enumeration of error, he contends that the trial court erred in denying his motion to suppress his recorded statement to the police on the day of the shooting. Henderson points to two statements made by detectives during the interrogation, which he claims gave him a hope of benefit and rendered his statement inadmissible. We disagree.

OCGA § 24-8-824 provides: "To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."

---

[2] We remind litigants that the Court will end our practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

> The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. Although we defer to the trial court's findings of disputed facts, we review de novo the trial court's application of the law to the facts. We will not disturb the trial court's factual and credibility determinations unless they are clearly erroneous. However, where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo.

(Citations and punctuation omitted.) *Perez v. State*, 309 Ga. 687, 692 (2) (848 SE2d 395) (2020).

At a *Jackson-Denno* hearing,[3] one of the two detectives who interviewed Henderson testified about the circumstances of the questioning. Henderson was arrested and then questioned in an interview room at the DeKalb County Police headquarters. The first detective testified that Henderson was not threatened and no promises were made to him about anything, including bond, reduction of charges, or any potential sentence he might receive. After being asked about his age and education and whether he was

---

[3] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

under the influence of drugs or alcohol, Henderson read and signed a form waiving his *Miranda* rights.[4] In the initial questioning, when asked where he had been the day of the shooting, Henderson told the detectives that he went to his mother's house, then to his sister's house, then his friend Tasha picked him up there in her car, and the police stopped them shortly afterward. He stated that he had been nowhere else that day. Then the following exchange occurred between Henderson and the second detective:

Q: While I, I'm pretty sure you did go to your mama's house and I know you went to your sister's house and I know Tasha picked you up before the police came, I know all that.
A: Uh-huh.
Q: There's something that happened in the middle. That you, you're not telling me and, and I get it, you don't want to tell me[,] but right now, it's going to only help you. Okay? But if you keep lying to me, there's not much I can do for you.

Henderson insisted that he had gone nowhere else, and the first detective disclosed that they had a video recording of him, but Henderson continued to insist that he had been nowhere else. The

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

second detective urged him to "[t]ell the truth about what happened. . . . Sitting up here, keep lying to us is not going to get us anywhere," and asked him if he had been to a Chevron station that day. Henderson replied, "No. Hell, no." The detective asked, "Hell no?" and Henderson said, "Uh, and guess what. I just rolled by there, I just rolled by." The detective said, "I know you did," and the first detective added, "You on camera, some folks you know already told us what happened, okay? So, ain't no point in sitting up here, keep trying to lie to us. It's not going to work man. . . . Like [the second detective] said, you can help yourself right now."

Henderson concedes that any hope of benefit arising from the detectives' statements to "help you" and "help yourself" is "admittedly vague." But he contends that because he knew he was in custody for Hill's shooting, and because the detectives did not elaborate that "help yourself" meant to make himself feel better or "make him right with his God," the only possible interpretation "was to help himself in the context of the criminal investigation, i.e., a lesser sentence, a lower bond, lesser or no criminal charges." We

8

disagree.

It is well established that interview tactics such as telling the appellant that he could "help himself" by telling the truth do not violate OCGA § 24-8-824. As this Court has observed:

> It has long been understood that "slightest hope of benefit" refers to *promises related to reduced criminal punishment* — a shorter sentence, lesser charges, or no charges at all. By contrast, this Court has explained that certain other tactics used by law enforcement — such as exhortations or encouragement to tell the truth, conveying the seriousness of the accused's situation, or offering to inform the district attorney about the accused's cooperation while making clear that only the district attorney can determine charges and plea deals — do not amount to a hope of benefit.

(Citations and punctuation omitted; emphasis supplied.) *Perez*, 309 Ga. at 693-694 (2) (telling accused that he "could help himself by being honest and by telling them what had really happened" was not a hope of benefit under OCGA § 24-8-824). See also *Reed v. State*, 307 Ga. 527, 533 (2) (a) (837 SE2d 272) (2019) ("[E]xhortations or encouragement to tell the truth and comments conveying the seriousness of a suspect's situation do not render his subsequent statements involuntary."). The detectives made no "promises related

9

to reduced criminal punishment" but merely encouraged Henderson to help himself without promising him hope for a lesser sentence or a reduction in his charges, and the trial court did not err by admitting Henderson's statement into evidence at trial.

3. Henderson also contends that the trial court erred in sustaining the State's objection to his trial testimony regarding a statement Hill made to him before the shooting. Relying on cases decided under Georgia's former Evidence Code, Henderson contends this testimony was relevant to his defense of justification and the reasonableness of his fear of Hill.[5]

During Henderson's direct examination, the surveillance video from the store was played while Henderson recounted the events leading up to the shooting. Then the following exchange occurred:

> [DEFENSE COUNSEL]: You say [Hill] was walking up on you. Is this where he was walking up on you?
> [APPELLANT]: Uh-huh.
> [DEFENSE COUNSEL]: And what is he saying to you at this moment?

---

[5] Under the current Evidence Code, "[t]he admissibility of evidence of a victim's character is now governed by OCGA § 24-4-404 and § 24-4-405." (Citation omitted.) *Gibson v. State*, 300 Ga. 494, 498 (3) n.8 (796 SE2d 712) (2017). See generally *White v. State*, 307 Ga. 882, 885 (2) (838 SE2d 828) (2020).

[APPELLANT]: Don't talk to me with his hands. Don't talk to me with your hands. I don't play that. Don't talk to me with your hands. He went to saying something and I done been to prison before and —
[PROSECUTOR]: Objection. Objection.
[COURT]: Sustained. Strike it from the record.

Henderson raised this issue in his motion for new trial, and the trial court ruled that the statement was properly stricken as inadmissible character evidence, and moreover would not have affected the outcome of the trial. We agree with the trial court that striking this testimony, even if it amounted to error, was harmless.

"[I]t is fundamental that harm as well as error must be shown for reversal." (Citations and punctuation omitted.) *O'Neal v. State*, 288 Ga. 219, 223 (2) (702 SE2d 288) (2010). "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (Citations, punctuation and footnote omitted.) *Smith v. State*, 299 Ga. 424, 432 (2) (d) (788 SE2d 433) (2016). See also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ."). "In

11

determining whether trial court error was harmless, we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." (Citations and punctuation omitted.) *Peoples v. State*, 295 Ga. 44, 55 (4) (c) (757 SE2d 646) (2014).

So viewed, any error in striking the complained-of statement was harmless. In his account of the incident on direct examination, Henderson also claimed that Hill and Newberry cursed him and made explicit threats to him. He testified that the two men said that they wanted to fight him, that they said they would "beat his little b*tch *ss," that they "said something about snapping my neck and p*ssing down my throat," and that Hill "charged" him. Henderson's somewhat ambiguous testimony that Hill said he had "been to prison before," to the extent it could be construed as a threat, thus added little if anything to the more explicit threats to which Henderson testified. See *Mitchell v. State*, 293 Ga. 1, 3 (2) (742 SE2d 454) (2013) (exclusion of evidence harmless when cumulative of

12

other evidence admitted at trial). Moreover, the evidence of Henderson's guilt was very strong. As noted above, other testimony and the store surveillance recording showed that Henderson initiated the conflict, that neither Hill nor Newberry displayed a weapon, that Henderson already had his hands on the gun in his waistband as he entered the store, and that he was leaving the store when he turned around in the doorway and shot Hill from behind his companion. Thus, any error by the trial court in limiting Henderson's testimony was harmless, as it is highly probable that any such error did not contribute to the verdicts. See *Keller v. State*, 308 Ga. 492, 503 (5) (842 SE2d 22) (2020) ("[I]n light of the strong evidence of [appellant's] guilt," refusal to allow appellant's witness to testify was "harmless error, if error at all," because it was highly probable that exclusion of evidence did not contribute to verdict.) (Citations and punctuation omitted).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 1, 2021.
Murder. DeKalb Superior Court. Before Judge Barrie.
*Daniel H. Petrey*, for appellant.
*Sherry Boston, District Attorney, Emily K. Richardson, Deborah D. Wellborn, Roderick B. Wilkerson, Drew K. Shumate, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kathleen L. McCanless, Assistant Attorney General*, for appellee.