**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 2, 2022**

# In the Court of Appeals of Georgia

A22A0633. DUKES v. THE STATE.

LAND, Judge.

After a jury trial, Bo Dukes was convicted of two counts of making a false statement, one count of hindering apprehension or punishment of a criminal, and one count of concealing the death of another. He appeals from the denial of his amended motion for new trial, arguing that the trial court erred in admitting his confessions and in failing to merge several of his convictions during sentencing. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only

whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that in 2006, Dukes and John McCullough attended basic training together at Fort Sill Army Base in Oklahoma. During the Christmas holiday, McCullough traveled to Dukes' hometown of Ocilla, Georgia, and the two men drove past a missing person's billboard for Tara Grinstead, a local high school teacher who disappeared in 2005. Later that day, Dukes, who had been drinking, made several comments to McCullough about Grinstead's disappearance. He told McCullough that his friend, later identified as Ryan Alexander Duke, had previously shown up at Dukes' house and said that he had "messed up" and needed Dukes' truck.[1] Ryan proceeded to tell Dukes that he had beaten, strangled, and killed Grinstead. Dukes also told McCullough that he and Ryan used Dukes' truck to take Grinstead's body to a pecan orchard on land owned by Dukes' family where they burned Grinstead's body and buried her remains. McCullough was disturbed by these

---

[1] To avoid confusion, the appellant Bo Dukes is referred to in this opinion as "Dukes," and his friend, Ryan Alexander Duke, will be referred to as "Ryan."

comments and eventually contacted law enforcement. In 2016, McCullough spoke with GBI Agent Jason Shoudel and told him what Dukes had said.[2]

(a) *The 2016 Statement.*

On June 16, 2016, GBI Agent Shoudel met with Dukes at the Rochelle Police Department in Wilcox County. Dukes was not under arrest at the time of this interview and was not given any *Miranda*[3] warnings at that time. The interview was recorded. Shoudel asked Dukes if he had made "any comments" about Grinstead to McCullough. Dukes denied doing so. After Shoudel stated that McCullough had been adamant that Dukes had made comments to him about "burning a body," Dukes again denied making any comments to McCullough. Shoudel then asked Dukes whether he had "help[ed] anybody?" or "burn[ed] her body?" Dukes denied doing so.

(b) *The February 19, 2017 Statements.*

In February 2017, Dukes' attorney contacted GBI Agent Shoudel and arranged a meeting to take place on February 19, 2017. The initial meeting that day included Dukes, Dukes' attorney, Paul Bowden (District Attorney for the Tifton Judicial

---

[2] Dukes also told several other people about his knowledge of and involvement in Grinstead's disappearance, including his girlfriend, his girlfriend's mother, his cousin, his brother, Ryan's brother, and a friend.

[3] *Miranda v. Arizona*, 384 U. S. 436, 479 (86 SCt 1602, 16 LE2d 694) (1966).

3

Circuit), Kim Schwalls (Bowden's assistant district attorney), and Brad Rigby (District Attorney for the Cordele Judicial Circuit). The meeting was not recorded and lasted approximately thirty minutes. Shoudel was not present. With the understanding that Dukes was willing to cooperate with the GBI, Bowden told Dukes that "if he was truthful with us, cooperated, and was not involved with [Grinstead's] homicide, only the cover-up, that we were in a position that we could help him." Dukes' attorney requested, and Bowden agreed, that if Dukes was needed to testify for the State at any proceeding, he would be given "use immunity" for his testimony. In other words, the State would not use any such testimony Dukes may provide against him. Dukes was not promised any other immunity; no other agreements or deals were made or offered; and the record reflects that Dukes never testified for the State. Neither Bowden nor anyone else ever promised Dukes a shorter sentence, lesser charges, or no charges. No specific charges were discussed at this meeting.

Immediately following the meeting, Dukes and his attorney met with GBI Agent Shoudel. Shoudel did not make any promises or threats to Dukes, and Dukes was not under arrest or given any *Miranda* warnings at this meeting. During this meeting, Dukes gave a brief description of Ryan's involvement in Grinstead's murder and confirmed the location of Grinstead's remains in the pecan orchard.

4

(c) *The February 21, 2017 Statement.*

On February 21, 2017, Shoudel met with Dukes and his attorney again. At this meeting, Dukes was advised of his *Miranda* rights, and he signed documents admitting that he had not been promised anything in exchange for his statement. In this interview, Shoudel again asked Dukes whether he had made any statements to McCullough about Grinstead's disappearance. This time, Dukes stated that he did not remember the conversation but that it had likely taken place. Dukes then told Shoudel that Ryan had confessed to him that he had killed Grinstead and provided Shoudel with information about the burning of Grinstead's body in the pecan orchard. He also gave Shoudel a list of individuals he had talked to about his involvement in Grinstead's disappearance. .

(d) *The February 22, 2017 Statement.*

The next day, February 22, 2017, another GBI agent transported Dukes to the pecan orchard so that he could assist law enforcement in locating Grinstead's remains. Dukes was reminded of his *Miranda* rights, but he was not under arrest during this time and was not promised anything in exchange for his cooperation. During the drive to the orchard, Dukes made additional statements about his involvement in Grinstead's disappearance. These statements were recorded.

5

(e) *The Charges Against Dukes, Pre-Trial Proceedings, and Trial*.

Based on the above, Dukes was charged with two counts of making a false statement, one count of hindering apprehension or punishment of a criminal, and one count of concealing the death of another. All of these charges arose from Dukes' June 16, 2016 interview with GBI Agent Shoudel. Before trial, the court conducted a *Jackson-Denno*[4] hearing to determine whether Dukes' 2016 and 2017 statements were voluntarily given and admissible. The court determined that they were and admitted the statements.

After a jury trial, Dukes was convicted of all charges and sentenced to a total of 25 years. After a hearing, Dukes' amended motion for new trial was denied. This appeal follows.

1. Dukes argues that the trial court erred in admitting his three February 2017 statements because they were allegedly not given voluntarily. Specifically, he contends that District Attorney Bowden's statement that the prosecutors were "in a position that we could help" Dukes was an impermissible hope of benefit that induced Dukes' February 19, 21, and 22 statements. We disagree.

---

[4] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

We review a trial court's findings relating to the admissibility of an incriminating statement under a clearly erroneous standard. *Daniel v. State*, 268 Ga. 9, 10 (2) (485 SE2d 734) (1997). "To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-8-824. The "'slightest hope of benefit' refers to promises related to reduced criminal punishment – a shorter sentence, lesser charges, or no charges at all." *Henderson v. State*, 310 Ga. 708, 712 (2) (854 SE2d 523) (2021). In contrast, "exhortations or encouragement to tell the truth . . . or offer[s] to inform the district attorney about the accused's cooperation while making clear that only the district attorney can determine charges and plea deals—do not amount to a hope of benefit." Id.

Based on the controlling case law, it is clear that Bowden's statement to Dukes that he and his fellow prosecutors were in a position to "help" if Dukes cooperated and told the truth was merely an "exhortation or encouragement to tell the truth" and not a promise for "a shorter sentence, lesser charges, or no charges at all." *Henderson*, 310 Ga. at 712 (2). In *Henderson*, our Supreme Court held that the following statements did not amount to a hope of benefit within the meaning of OCGA § 24-8-824 but were instead permissible "exhortations or encouragement to tell the truth":

7

"[I]t's going to only help you" to tell the truth; "But if you keep lying to me, there's not much I can do for you"; and "Sitting up here, keep lying to us is not going to get us anywhere. . . . So, ain't no point in sitting up here, keep trying to lie to us. It's not going to work man. . . . Like [the second detective] said, you can help yourself right now." Id. at 711-712 (2). Similarly, in *State v. Roberts*, 273 Ga. 514, 516 (3) (543 SE2d 725) (2001), overruled on other grounds by *Vergara v. State*, 283 Ga. 175, 178 (657 SE2d 863) (2008), our Supreme Court held that the following statements did not constitute an impermissible hope of benefit but were properly characterized as "admonitions to tell the truth [that] will not invalidate a confession": "You need to deal with us, you've got to explain that"; "Let us help you"; "We can't help you like this" referring to the defendant lying to them; talking to officers is "the only way you can set that right"; "The truth will set you free"; "I can't show you, you need to trust me more than that"; and "You have to talk to one of us."

In *Dawson v. State*, 308 Ga. 613, 621 (3) (842 SE2d 875) (2020), our Supreme Court held that it was not improper for the detective to have implored the defendant "to tell the truth and to help himself." In *Preston v. State*, 282 Ga. 210, 212 (2) (647 SE2d 260) (2007), the interrogating officer told the accused that the district attorney based charging decisions on the police's recommendation and asked the accused to

8

"permit him to help." The Court held that these statements were permissible admonitions to tell the truth as opposed to an improper hope of benefit. Id. See also *Pittman v. State*, 277 Ga. 475, 478 (2) (592 SE2d 72) (2004) (no hope of benefit when detective urged an accused to tell the truth so that "he could 'work this'"); *Lee v. State,* 270 Ga. 798, 800 (2) (514 SE2d 1) (1999) (no hope of benefit when police officer told accused that by talking with him, "all you're going to do is help yourself out"); *Fowler v. State*, 246 Ga. 256, 258 (4) (271 SE2d 168) (1980) (no hope of benefit when police stated it would "behoove [defendant] if he shot straight with us").

We fail to see any meaningful distinction between the statements referenced above and the statement made by Bowden that he and the other prosecutors were in a position to "help" if Dukes cooperated and was truthful. The fact that the district attorneys *could* help Dukes does not mean that they offered to do so, much less that they offered an improper hope of benefit in the form of reduced criminal punishment. That issue was never discussed. The controlling precedent shows that our Supreme Court "has consistently interpreted the phrase 'slightest hope of benefit' not in its colloquial sense, but as it is understood in the context within the statute, and therefore it has long been understood that 'slightest hope of benefit' refers to promises related to reduced criminal punishment –- a shorter sentence, lesser charges, or no charges

9

at all." *Dawson*, 308 Ga. at 618 (3). Where the hope of benefit "is a product of the defendant's own mind, rather than the result of inducement by others, the statement is admissible." *Williams v. State*, 250 Ga. 553, 559 (1) (300 SE2d 301) (1983).

Here, there is no evidence that anyone made any promises to Dukes for a shorter sentence, lesser charges, or no charges at all. In fact, the subject of punishment and potential charges was never discussed. Compare *Foster v. State*, 283 Ga. 484, 487 (2) (660 SE2d 521) (2008) (accused's statement was involuntary when made as a result of officer's promise not to press any additional charges relating to murder weapon). For these reasons, Bowden's statement that he and the other prosecutors were in a position to "help" Dukes is not a prohibited "hope of benefit" within the meaning of OCGA § 24-8-824 and does not render Dukes' subsequent statements inadmissible. The trial court did not err by admitting these statements.[5]

---

[5] The State's agreement to give Dukes "use immunity" in the event he ever testified for the State does not change the result. The record shows that Dukes was never called upon to testify for the State; thus, the issue of "use immunity" never came to fruition. Further, there was never any agreement, offer, or discussion concerning the grant of immunity in return for Dukes' decision to cooperate and talk with law enforcement. As held above, his decision to do so was voluntary and not induced by any impermissible promise.

2. Dukes argues that the trial court erred when it did not (1) merge the two counts of making a false statement; (2) merge the count of hindering apprehension or punishment of a criminal into the first count of making a false statement; and (3) merge the count of concealing the death of another into either the first or second counts of making a false statement. "Whether offenses merge is a legal question, which an appellate court reviews de novo." (Citations and punctuation omitted.) *Johnson v. State*, 313 Ga. 155, 159 (4) (868 SE2d 226) (2022).

(a) Dukes contends that the trial court erred by failing to merge his convictions for making a false statement under Count 1 and Count 2 because these convictions arose from the same act. We disagree.

When a defendant is convicted of multiple counts of the same crime, "the correct merger analysis requires courts to ask whether those crimes arose from 'a single course of conduct' and, if so, whether the defendant can face multiple convictions and sentences under a unit-of-prosecution analysis." (Citation omitted.) *Johnson*, 313 Ga. at 159 (4). Here, the two false statement crimes giving rise to Counts 1 and 2 did arise from "a single course of conduct" (the June 16, 2016 interview with GBI Agent Shoudel when Dukes concealed Ryan's confession and Dukes' own involvement in the destruction and disposal of Grinstead's body). Thus,

11

the Court must turn its focus to the "unit-of-prosecution analysis." For the reasons stated below, that analysis supports the trial court's decision on merger and reveals no error.

Count 1 charged Dukes with making a false statement under OCGA § 16-10-20 when:

> [T]he accused, on or about the 16th day of June, 2016, knowingly and willfully falsif[ied], conceal[ed], or cover[ed]-up that *Ryan Alexander Duke had confessed to him th[at] Ryan Alexander Duke had killed Tara Faye Grinstead*, a material fact in [the] investigation of the disappearance of Tara Faye Grinstead, a matter within the jurisdiction of the Georgia Bureau of Investigation, an agency of state government, by his denial to Agent Jason Shoudel of the Georgia Bureau of Investigation that he did not discuss Tara Faye Grinstead with John McCullough.

In contrast, Count 2 charged Dukes with making a false statement under OCGA § 16-10-20 when:

> [T]he accused, on or about the 16th day of June, 2016, knowingly and willfully falsif[ied], conceal[ed], or cover[ed]-up that *he assisted Ryan Alexander Duke destroy and dispose of the body of Tara Faye Grinstead*, a material fact in [the] investigation of the disappearance of Tara Faye Grinstead, a matter within the jurisdiction of the Georgia Bureau of Investigation, an agency of state government, by his denial to

12

Agent Jason Shoudel of the Georgia Bureau of Investigation that he did not discuss burning the body of Tara Faye Grinstead with John McCullough.

As a plain reading of this indictment reveals, Dukes was charged with concealing two separate material facts–(1) Ryan's confession that he killed Grinstead, and (2) the fact that Dukes helped Ryan destroy and dispose of Grinstead's body. Although Ryan's confession and Dukes' subsequent assistance with the destruction of Grinstead's body did not occur at the same place or time, the crimes of making a false statement did. They arose from a single course of conduct at the same time and place, i. e., the June 16, 2016 interview about Grinstead's disappearance. Compare *Johnson v. State*, __ Ga. App. at __ (1) (Case No. A20A0996, decided June 15, 2022) (three theft-by-taking convictions were part of a single course of conduct where defendant acted with the same intent, the crimes all "occurred in the same targeted area," and the "brief passages of time" between thefts "result[ed] from limits on how much property" defendant could move at a time) with *Spears v. State*, 296 Ga. 598, 602 (2) (769 SE2d 337) (2015), disapproved of on other grounds by *Willis v. State*, 304 Ga. 686, 706 n.3 (11) (820 SE2d 640) (2018) (two burglaries at same victim's house were not part of a continuous course of conduct when defendant "left the

13

victim's house, drove to a church, returned to the house after realizing that he had failed to steal the victim's cigarette case containing money, and reentered the house with the intent to commit the theft of the cigarette case and money").

Where, as here, two crimes arise from a single course of conduct,"the merger analysis requires careful interpretation of the criminal statute at issue to identify the unit of prosecution — the precise act or conduct that the legislature criminalized." (Citations and punctuation omitted.) *Johnson*, __ Ga. App. at __ (2). To identify the unit of prosecution, this court "applies fundamental rules of statutory construction requiring courts to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage so as to effectuate the intent of the Georgia legislature." (Citation and punctuation omitted.) Id. However, "[i]f the General Assembly fails to denote the unit of prosecution in the statute . . . then courts must resolve the ambiguity and are constrained to do so in favor of the defendant charged with having violated the statute." (Citation and punctuation omitted.) Id. "Statutory interpretation is a question of law, which we review de novo, giving no deference to the trial court's ruling." (Citation omitted.) *Scott v. State*, 356 Ga. App. 152, 157 (5) (846 SE2d 241) (2020).

14

Under OCGA § 16-10-20, a person commits the crime of making a false statement when he "knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device *a material fact* . . . , in any matter within the jurisdiction of any department or agency of state government. . . ." (Emphasis supplied.) The use of the article "a" is instructive here and indicates an intent by the General Assembly to define the unit of prosecution as the concealment of a *single* material fact. Accordingly, we conclude that OCGA § 16-10-20 is unambiguous and permits prosecution for the concealment of each individual material fact. Here, there were two such material facts and, hence, no merger of these two counts. The trial court's refusal to merge Counts 1 and 2 is affirmed. See *Smith v. State*, 290 Ga. 768, 774 (3) (723 SE2d 915) (2012) (holding that a defendant who ignored signals to stop by multiple police vehicles could be sentenced on multiple counts of "attempt[ing] to elude *a* pursuing police vehicle or police officer" since "it is the act of fleeing from *an* individual police vehicle or police officer after being given *a* . . . signal to stop from *that individual police vehicle or officer*, and not just the act of fleeing itself, that forms the proper unit of prosecution") (citation and punctuation omitted; emphasis supplied).

15

(b) Dukes argues that his conviction under Count 3 for hindering apprehension or punishment of a criminal (OCGA § 16-10-50) should have merged into his conviction under Count 1 for making a false statement by concealing Ryan's confession (OCGA § 16-10-20). We disagree.

Two statutes govern the merger analysis on this issue. OCGA § 16-1-7 (a) (1) provides: "When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if . . . [o]ne crime is included in the other." A crime is included in the other when "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged." OCGA § 16-1-6 (1).

We apply the required evidence test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006) to determine whether multiple convictions are precluded because one crime is included in the other. "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the required evidence test considers whether each provision requires proof of a fact which the other does not. If so, then there are two offenses, and neither is included in the other." *Collins v.*

16

*State*, 359 Ga. App. 338, 343-44 (4) (857 SE2d 515) (2021) (citing *Drinkard*, 281 Ga. at 214).

Here, Dukes contends that Count 3 required the proof of the same or less than all the facts required for Count 1. A review of the two statutes giving rise to these counts and the language of the indictment itself reveals that is simply not the case. With respect to Count 3, "[a] person commits the offense of hindering the apprehension or punishment of a criminal when, *with intention to hinder the apprehension or punishment of a person whom he knows or has reasonable grounds to believe has committed a felony or to be an escaped inmate or prisoner*, he . . . [c]onceals or destroys evidence of the crime." (Emphasis supplied.) OCGA § 16-10-50 (a) (2). In contrast, a person commits the offense of making a false statement (Count 1) when he "knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact . . . in any matter within the jurisdiction of any department or agency of state government. . . ." OCGA § 16-10-20.

Count 3 charged that Dukes hindered the apprehension or punishment of a criminal when he: (1) concealed Ryan's confession, (2) a crime Dukes knew or had reasonable grounds to believe Ryan had committed, (3) *with the intent to hinder the apprehension and punishment of Ryan*. In contrast, Count 1 charged that Dukes made

17

a false statement when he: (1) knowingly and willfully falsified, concealed, or covered up Ryan's confession that he killed Grinstead, (2) a material fact in the investigation of Grinstead's disappearance, (3) a matter within the jurisdiction of the GBI, (4) an agency of state government, (5) by his denial to GBI Agent Shoudel that he had discussed Grinstead with McCullough.

While both of these offenses arise from Dukes' concealment of Ryan's confession, each offense required proof of additional elements not required for the other offense. Specifically, Dukes' conviction under Count 3 required proof that (1) Dukes knew or had reason to believe Ryan murdered Grinstead, and (2) Dukes concealed Ryan's confession with the intent to hinder Ryan's apprehension and punishment. Count 1 did not require such proof. Accordingly, Count 3 does not merge into Count 1. While Dukes does not contend that Count 1 should have merged into Count 3, the Court notes that his conviction under Count 1 required proof that a conviction under Count 3 did not require, specifically proof that (1) Dukes knowingly and willfully concealed from the GBI a material fact in the investigation of Grinstead's disappearance, (2) this investigation was a matter within the jurisdiction of the GBI, and (3) the GBI is an agency of state government. Because each of these offenses required proof of elements not required for the other offense,

18

they do not merge, and the trial court did not err in sentencing Dukes for both offenses.[6]

(c) Finally, Dukes contends that his conviction under Count 4 for concealing the death of another (OCGA § 16-10-31) should have merged into his convictions under either Count 1 or Count 2 for making a false statement (OCGA § 16-10-20). We disagree.

A person commits the offense of concealing the death of another when he, "by concealing the death of any other person, hinders a discovery of whether or not such person was unlawfully killed." OCGA § 16-10-31. As noted above, a person commits the offense of making a false statement when he "knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact . . . in any matter

---

[6] For a discussion of the different elements required for these two offenses, see *Sneiderman v. State*, 336 Ga. App. 153, 155 (1), 162 (5) (784 SE2d 18) (2016), disapproved of on other grounds by *Quiller v. State*, 338 Ga. App. 206 (789 SE2d 391) (2016) ("the mens rea of [OCGA § 16–10–50] is an intent to hinder the apprehension or punishment of a person who the actor knows or has reason to believe is either (1) a felon, (2) an escaped inmate, or (3) an escaped prisoner" while essential elements of the offense of making a false statement include "proof that the concealed fact was material" and that the false statement was made "in any matter within the jurisdiction of any department or agency of state or local government") (Citation and punctuation omitted). For a discussion of the *mens rea* requirement for the "agency of state government" element of the false statement offense (an element that is not part of the hindering apprehension of a criminal offense), see *Haley v. State*, 289 Ga. 515, 521 (2) (b) (712 SE2d 838) (2011).

within the jurisdiction of any department or agency of state government. . . ." OCGA § 16-10-20.

Here, Count 4 charged that Dukes unlawfully concealed the death of Grinstead and thereby hindered the discovery of whether she was unlawfully killed by Ryan, by denying to GBI Agent Shoudel that he had any information concerning the death or destruction of Grinstead's body. In contrast, Count 1 charged that Dukes made a false statement when he knowingly and willfully falsified, concealed, or covered up Ryan's confession that he killed Grinstead (a material fact in the investigation of Grinstead's disappearance, a matter within the jurisdiction of the GBI, an agency of state government) by his denial to GBI Agent Shoudel that he had discussed Grinstead with McCullough. Count 2 charged that Dukes made a false statement when he knowingly and willfully falsified, concealed, or covered up that he assisted Ryan with the destruction and disposal of Grinstead's body (a material fact in the investigation of Grinstead's disappearance, a matter within the jurisdiction of the GBI, an agency of state government) by his denial to GBI Agent Shoudel that he discussed the burning of Grinstead's body with McCullough.

Based on the above, we conclude that a conviction under Count 4 required proof of facts not required for convictions under Counts 1 and 2, specifically proof

20

that Dukes' concealment of Grinstead's death hindered the discovery of whether Grinstead was unlawfully killed by Ryan. *Walker v. State*, 296 Ga. 161, 164 (1) (b) (766 SE2d 28) (2014) (to prove unlawful concealment of a death, the State must prove that defendant "actually concealed the fact of [the victim's] death" and the additional fact that defendant's "doing so delayed or otherwise hindered the discovery that [the victim's] death was an unlawful one"). Accordingly, Count 4 does not merge into Counts 1 or 2. While Dukes does not contend that Counts 1 and 2 should have merged into Count 4, we note that his convictions under Counts 1 and 2 required proof not required for his conviction under Count 4–specifically proof that (1) Dukes knowingly and willfully concealed from the GBI a material fact in the investigation of Grinstead's disappearance, (2) this investigation was a matter within the jurisdiction of the GBI, and (3) the GBI is an agency of state government. Because each of these offenses required proof of elements not required for the other offenses, they do not merge, and the trial court did not err in sentencing Dukes for each offense.

*Judgment affirmed. McFadden, P. J., and Gobeil, J., concur.*

21