**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 20, 2024**

# In the Court of Appeals of Georgia

A23A1320. STINSON v. THE STATE.

LAND, Judge.

After a jury trial, Mackenzi Stinson[1] was found guilty of criminal attempt to commit child molestation (OCGA §§ 16-4-1 and 16-6-4). Stinson appeals, arguing that the trial court erred in denying her general demurrer and in denying her motion to suppress her in-custody statements. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether,

---

[1] Stinson was tried jointly with her co-defendant, Johnathon Butler. Butler's conviction is not at issue in this appeal.

after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LEd2d 560) (1979).

So viewed, the record shows that in September 2019, the Forsyth County sheriff's office conducted a multi-agency undercover operation to identify and arrest online sexual predators targeting minor children. As part of the operation, police officers posed as minors online, setting up profiles on social media pages and other internet platforms.

On September 6, 2019, a Floyd County police sergeant posing as a fourteen-year-old named "Brittney Smith" was contacted by a user named "Mackenzi" on an internet platform used by individuals to meet and engage in sexual encounters. "Mackenzi" was later identified to be Stinson. Stinson told "Brittney" that she was looking for someone to "come stay with them for the weekend," meaning her and her boyfriend, Jonathan Butler. "Brittney" told Stinson that she was 14 years old, but Stinson continued to message her and asked how she would get away for the weekend.

Stinson provided "Brittney" with a cell phone number, and the online conversation then moved to text messaging. During the text messages, Stinson stated repeatedly that "Brittney" was beautiful and asked "Brittney" if she was a virgin, if she had kissed a girl before, and if she wanted to be "just ours."

Stinson made plans for her and Butler to drive from Tennessee to pick "Brittney" up at a gas station in Forsyth County, and return to Tennessee. On September 7, 2019, Stinson and Butler arrived at the gas station in Forsyth County. The two were immediately arrested and taken to a sheriff's office precinct for questioning. At the time of the interview, Stinson was 19 years old and had completed one year of college. After signing a *Miranda*[2] waiver, Stinson admitted that she had texted "Brittney" and that she knew "Brittney" was 14 years old. Although Stinson initially denied that she had sexual intentions toward "Brittney," she ultimately admitted to having sexual fantasies about being with a girl again. Stinson admitted that she had asked "Brittney" questions about her sexual experiences and that her interest in "Brittney" was sexual.

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LEd2d 694) (1966).

Stinson was indicted for computer pornography (count 1), criminal attempt to commit child molestation (count 2), and criminal attempt to commit interstate interference with child custody (count 3). She filed a motion to suppress her in-custody statements, and at a hearing, a video of Stinson's interview was played for the trial court. Although the record before us does not contain this video, a transcript of the video was made as it was being played in court. The following exchange took place as the interview began:

> Interviewer : Before we start asking you some questions, though, because you're in custody, I got to read you a couple things, all right?

> . . .

> Interviewer: Okay . . . . [L]et me advise you of these things . . . You have the right to remain silent. Anything that you can say can be used against you in court [of] law. You have the right to talk to a lawyer to be present while being questioned. If you cannot afford to hire a lawyer one will be appointed to you for questioning if you wish. You can decide at any time to exercise these rights and not answer questions or make any statements. You understand that?

> Okay. So just getting the first couple things out of the way. Your name is Mackenzi, but I'm not exactly sure how to spell it. How do you spell it?

Stinson: M-A-C-K-E-N-Z-I.

The interviewing officer testified that she read a waiver of rights form to Stinson, who signed the form after having the opportunity to read it herself. The officer testified that neither she nor the detective offered Stinson any hope of benefit or threatened her in any way, and that Stinson appeared to understand the questions being asked of her. When Stinson initially denied having any intent to have sexual contact with "Brittany," the detective interrupted her:

> Interviewer: Okay. Wait, wait. Don't— don't do this to yourself. Trust me. The last thing that you want to do is come into this room and look me in the face and lie to me because I already know what's going on, okay? So even though I ask you questions, I already know what the response should [be] because I know what the truth is . . . . So I want you to look deep in you and you need to be able to tell me the truth, okay? Because if you're going to lie to me, this whole thing is going to change and not for the good, okay? Okay. It's going to be much worse, all right? . . . If you do the right thing and you tell us the truth. That's going to go way further than giving us . . . lies.

> Stinson: So if I tell you the truth, me and my daughter and my fiancé can (inaudible)?

Interviewer: Absolutely not. Absolutely not. That is a foregone conclusion at this point, both you and he are going to jail (inaudible).

Later in the interview, as the officer was leaving the interview room, she told Stinson that "[t]he FBI is interested in you . . . . And let me tell you, it's going to be much, much easier for you to talk to me [and the detective.]" Stinson then asked "is there any way we can be home tomorrow if I'm honest?" The detective then told Stinson

If you're upfront and honest, like [the detective] just said, and (inaudible) go a lot better because obviously [the judge and everybody], they're going to see that you're an honest person . . . .

The trial court orally denied Stinson's motion to suppress her in-custody statements and later issued a written order, finding that Stinson's statements had been voluntarily made without the slightest hope of benefit or remotest fear of injury.

After the jury was sworn, defense counsel for both defendants jointly raised a general demurrer to the indictment. The trial court dismissed Counts 1 and 3 for failing to state venue, but rejected Stinson's argument that Count 2 was defective for failing to allege a substantial step taken towards the commission of the crime of child molestation. The jury found Stinson guilty of Count 2, and she was sentenced to ten

years with three to serve, with the remainder to be served on probation. Stinson's amended motion for new trial was denied, and this appeal followed.

1. Stinson argues that the trial court erred in denying her general demurrer as to the indictment's criminal attempt to commit child molestation charge because the indictment failed to allege the "substantial step" element of the offense.[3] We disagree.

"A general demurrer challenges the sufficiency of the substance of the indictment." (Citation and punctuation omitted.) *Stapleton v. State*, 362 Ga. App. 740, 741 (1) (869 SE2d 83) (2021). "To withstand a general demurrer, an indictment must: (1) recite the language of the statute that sets out all the elements of the offense charged, or (2) allege the facts necessary to establish a violation of a criminal statute." (Citation and punctuation omitted.) Id. "If the indictment states the offense in the

---

[3] In its order denying Stinson's general demurrer, the trial court also held that Stinson waived her right to file a general demurrer because she failed to file it within ten days from the waiver of arraignment or before trial. Unlike a general demurrer, "[s]pecial demurrers, which challenge the form of the indictment, must be made at or before arraignment or before trial or they are waived." (Citation and punctuation omitted.) *Rivera v. State*, 317 Ga. 398, 406 (1) (a) (893 SE2d 696) (2023). However, general demurrers are not required to be raised at that time because "[a] challenge to the sufficiency of the substance of the indictment may be made after trial by means of a motion in arrest of judgment, or attention may be called to such a defect at any time during trial." (Citation and punctuation omitted; emphasis omitted.) Id. Thus, Stinson did not waive this argument and we may address it on appeal. See id.

terms and language of the relevant Code section or so plainly that the nature of the offense charged may easily be understood by the jury, it shall be deemed sufficiently technical and correct." (Punctuation and footnote omitted.) *Dennard v. State*, 243 Ga. App. 868, 870 (534 SE2d 182) (2000).

> The issue is not whether the indictment could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow a defendant to prepare his defense intelligently and to protect him from double jeopardy.

(Punctuation and footnote omitted.) *Coleman v. State*, 318 Ga. App. 478, 480 (1) (735 SE2d 788) (2012), overruled on other grounds by *State v. Heath*, 308 Ga. 836, 840 (843 SE2d 801) (2020). We review a trial court's ruling on a general demurrer de novo. *Stapleton*, 362 Ga. App. at 741.

"A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. "The offense of criminal

attempt consists of three elements: first, the intent to commit the crime; second, the performance of some overt act towards the commission of the crime; and third, a failure to consummate its commission." (Citation and punctuation omitted.) *Stapleton*, 362 Ga. App. at 744 (1) (b). See OCGA § 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime"). "[T]o properly charge attempt, the State must merely allege that, with an intent to commit the underlying crime, the defendant performed some overt act toward its commission." (Citation and punctuation omitted.) *Wilson v. State*, 344 Ga. App. 285, 289 (2) (810 SE2d 303) (2018).

Stinson argues that the indictment failed to allege the substantial step element of the offense of criminal attempt to commit child molestation. Count 2 of the indictment stated, in relevant part, that Stinson

> on the 7th day of September, 2019, in the County of Forsyth, did knowingly and intentionally attempt to commit the crime of Child Molestation, in violation of Code section 16-6-4 of the Official Code of Georgia, an immoral and indecent act done for the purpose of arousing and satisfying the sexual desires of said accused, by driving to Forsyth County to meet . . . a person believed to be Brittany Smith, a child under

the age of 16 years, for the purpose of committing a sexual act with said person, with the intent to arouse and satisfy the sexual desires of said accused, contrary to the laws of this State, the good order, peace and dignity thereof.

Although the indictment does not explicitly state that Stinson's travel to Forsyth County was a substantial step toward the commission of the crime of child molestation, it is necessarily inferred by the allegation that Stinson committed the crime of attempted child molestation when she drove to Forsyth County to meet an individual that Stinson believed to be under 16 years of age, "for the purpose of committing a sexual act with [that individual], with the intent to arouse and satisfy [Stinson's] sexual desires." See *Coleman*, 318 Ga. App. at 479-481 (1) (rejecting challenge to indictment for attempted burglary on the ground that it failed to allege the intent element where intent was "necessarily inferred" from the allegations). "Considering the allegations of the indictment as a whole, there can be no reasonable doubt that [Stinson] was sufficiently informed of the charges against [her] and also protected from subsequent prosecution for the same crime." (Citation and punctuation omitted.) Id. at 480-481 (1). "Thus, the indictment is not defective, and

the trial court did not err in denying [Stinson's] motion for a new trial on this ground." (Citation and punctuation omitted.) Id..

2. Stinson argues that the trial court erred in denying her motion to suppress her in-custody statements because she did not voluntarily, knowingly, and intelligently waive her *Miranda* rights, and because her statements were induced by hope of benefit and fear of injury.

(a) Stinson argues that, under the totality of the circumstances, she did not voluntarily, knowingly, and intelligently waive her *Miranda* rights. Specifically, Stinson argues that because the interviewing officer did not ask her whether she wanted to waive her *Miranda* rights and speak with law enforcement, in conjunction with her youth and unfamiliarity with the legal system, she did not make a voluntary, knowing, and intelligent waiver of her rights. We disagree.

"The State bears the burden of demonstrating the voluntariness of a defendant's statement by a preponderance of the evidence." (Citation and punctuation omitted.) *Matthews v. State*, 311 Ga. 531, 540 (3) (a) (858 SE2d 718) (2021). "In determining whether a defendant's statement was voluntary as a matter of constitutional due process, a trial court must consider the totality of the

11

circumstances." (Citation and punctuation omitted.) *Matthews,* 311 Ga. at 540 (3) (a). When determining the voluntariness of (or lack of compulsion surrounding) a defendant's incriminating statement, the trial court considers

> factors as the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.

(Punctuation and footnote omitted; emphasis omitted.) *Fofanah v. State*, 355 Ga. App. 895, 897-898 (846 SE2d 154) (2020). "An appellate court will not disturb such factual and credibility determinations unless clearly erroneous." *Price v. State*, 297 Ga. 79, 80 (2) (772 SE2d 683) (2015).

With regard to whether a defendant is advised of her constitutional rights, "[i]t is axiomatic that a rendering of the *Miranda* warnings must be intelligible before a defendant can knowingly and intelligently waive the rights involved." *Clay v. State*, 290 Ga. 822, 825-826 (2) (A) (2) (725 SE2d 260) (2012). However, a defendant "need not have had experience with the justice system to understand what was said during

the reading of h[er] *Miranda* rights." *Huffman v. State*, 311 Ga. 891, 894 (860 SE2d 721) (2021).

Here, the record shows that Stinson was 19 years old at the time of the interview and had at least one year of college education. She was provided a copy of the full *Miranda* warning and given the opportunity to read the warnings herself, after which she signed a *Miranda* waiver and spoke with detectives. There is no evidence in the record before us that Stinson did not understand the *Miranda* warnings given to her despite her unfamiliarity with the justice system. Compare *Clay*, 290 Ga. at 825 (2) (A) (2) (affirming motion to suppress in custody statements where defendant was "experiencing the effects of [a] drug-induced coma" and where law enforcement read the Miranda warnings "in such a super-speed manner that the warnings likely could not have been identified as anything more than gibberish") (punctuation omitted). Stinson did not invoke her right to remain silent or to have counsel present for questioning at any time during the interview. See *Starling v. State*, 299 Ga. 263, 266 (3) (787 SE2d 705) (2016) (defendant's statement was voluntary when his answers were "rational and coherent" and he expressed willingness to talk with law

enforcement). Accordingly, the evidence supports the trial court's finding that Stinson knowingly and voluntarily gave her statement to law enforcement. See id.

(b) Stinson also argues that her statements were induced by a hope of benefit and fear of injury in violation of OCGA § 24-8-824. We disagree.

"To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-8-824. The "'slightest hope of benefit' refers to promises related to reduced criminal punishment – a shorter sentence, lesser charges, or no charges at all." (Citation and punctuation omitted; emphasis omitted.) *Henderson v. State*, 310 Ga. 708, 712 (2) (854 SE2d 523) (2021). In contrast, "exhorting a suspect to tell the truth does not constitute a hope of benefit within the meaning of the statute." *Torres v. State*, 314 Ga. 838, 852 (2) (878 SE2d 453) (2022).

Law enforcement did not promise Stinson that she would not be charged with a crime or that she would receive reduced charges, sentencing or punishment if she provided a statement. Instead, "the record here shows that during the course of the interview, [law enforcement] implored [Stinson] to tell the truth and to help [herself], which was not improper." (Citation and punctuation omitted.) *Dawson v. State*, 308

Ga. 613, 621 (3) (842 SE2d 875) (2020). Although Stinson argues that Detective Belafi's statement that the FBI was interested in Stinson led her to believe that she would not face federal charges if she spoke with them, where the hope of benefit "is a product of the defendant's own mind, rather than the result of inducement by others, the statement is admissible." *Williams v. State*, 250 Ga. 553, 559 (1) (300 SE2d 301) (1983). Accordingly, law enforcement's statements to Stinson were not improper. See *Dawson*, 308 Ga. at 621 (3) (interviewing officer did not provide a hope of benefit where the officer never "promised" the appellant "that he would not be charged with a crime or that he would receive reduced charges, sentencing or punishment if he made incriminating statements") (citation and punctuation omitted).

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*